**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

GREGORY CARSON; WILBERT SKIPPER,
JR.; MELVYN CONNORS; WILLIAM
INGRAM; DAVID NEWMAN; ANTHONY
BLOCKER; MAURICE MATHEWS; W.
KIRB QUALLS, JR.; JOHN W. DALLAS,
JR.; DAVID JONES; JERRY MUNGRO,
Plaintiffs-Appellees,

v.

No. 97-2240

GIANT FOOD, INC.; PETER MANOS;
SAMUEL THURSTON; MARIA MYERS;
ROBERT HAYWOOD; DEBORAH LILLY;
TOM MAYNARD; CHRISTOPHER
BALODEMAS,
Defendants-Appellants.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
J. Frederick Motz, Chief District Judge.
(CA-96-2882-JFM)

Argued: March 5, 1999

Decided: April 29, 1999

Before WILKINSON, Chief Judge, and WILKINS and
LUTTIG, Circuit Judges.

_____

Affirmed and remanded by published opinion. Chief Judge Wilkinson
wrote the opinion, in which Judge Wilkins and Judge Luttig joined.

_____

**COUNSEL**

**ARGUED:** Kumiki San Gibson, WILLIAMS & CONNOLLY, Washington, D.C., for Appellants. William Ray Ford, Camp Spring, Maryland, for Appellees. **ON BRIEF:** Robert P. Watkins, WILLIAMS & CONNOLLY, Washington, D.C.; Robert B. Fitzpatrick, FITZPATRICK & ASSOCIATES, Washington, D.C., for Appellants. Jo Ann P. Myles, Largo, Maryland, for Appellees.

_____

**OPINION**

WILKINSON, Chief Judge:

Eleven current and former employees brought individual and class claims of race, age, and disability discrimination against their employer, Giant Food, Inc., and individual Giant officers and managers. After examining four collective bargaining agreements (CBAs) between the employees' unions and Giant, the district court refused to compel arbitration. On appeal, Giant argues that the district court should have let the arbitrator decide which claims were arbitrable and that the CBAs required the arbitration of discrimination claims. We reject both arguments. First, the CBAs do not clearly and unmistakably provide that an arbitrator is to decide which claims the parties agreed to arbitrate. Second, the CBAs do not clearly and unmistakably require the arbitration of statutory discrimination claims. Thus, we affirm the judgment of the district court.

I.

Plaintiffs are current and former African American employees of the supermarket food chain Giant Food. Claiming that Giant and its officers and managers discriminated against employees on the basis of race, age, and disability, plaintiffs brought suit in September 1996. They alleged numerous individual and class claims, including claims under Title VII, 42 U.S.C. § 1981, the Age Discrimination in Employment Act (ADEA), and the Americans with Disabilities Act (ADA). The employees sought compensatory and punitive damages totaling $300 million, injunctive and declaratory relief, reinstatement of discharged employees, and attorneys' fees.

2

In response, defendants noted that the named plaintiffs were represented by four different unions which had entered into four different CBAs. Defendants asserted that each of those CBAs required the arbitration of employee statutory discrimination claims. They based their argument on two clauses -- a nondiscrimination clause and an arbitration clause -- that appear in each CBA.

The nondiscrimination provisions in the four CBAs are similar. The CBA negotiated by the United Food and Commercial Workers Union, Local 400, includes a clause in the preamble:

> WHEREAS, the Employer and the Union in the performance of this Agreement agree not to discriminate against any employee or applicant for employment because of race, color, religious creed, origin, age or sex.

The preamble of the CBA signed by the International Brotherhood of Teamsters, Local 639, contains an identical clause, except that the word "Company" is substituted for the word"Employer." The CBA agreed to by the Teamster's Warehouse Employees Local 730 similarly states that

> The Employer and the Union in the performance of this Agreement agree not to discriminate against any employee or applicant for employment because of race, sex, age, color, religious creed or national origin.

And the fourth CBA, entered into by the Teamster's Automotive Employees Local 922, provides

> The Employer and the Union agree that neither will discriminate either directly or indirectly, nor will they permit any of their agents, members or representatives to discriminate either directly or indirectly, against any employee by reason of race, creed, color, national origin, age, sex, or membership or activity in the Union.

In addition to the nondiscrimination provisions, the four CBAs also contain arbitration clauses defining the scope of arbitrable matters. The CBAs for Locals 639, 730, and 922 each state that

3

> [S]hould any grievance or dispute arise between the parties regarding the terms of this Agreement, [the parties will try to resolve the matter]. . . . If agreement cannot be reached, the parties agree that within five (5) days they shall select a neutral and impartial arbitrator . . . .

The arbitration clause negotiated by Local 400 is slightly different, requiring arbitration of any "controversy, dispute or disagreement . . . concerning the interpretation of the provisions of this Agreement."

Asserting that the language of these agreements required the arbitration of plaintiffs' claims, defendants moved for summary judgment. The district court denied this motion in August 1997.**1** It found that the language of the CBA antidiscrimination and arbitration clauses was not broad enough to require the arbitration of plaintiffs' claims under Title VII, section 1981, the ADEA, and the ADA.**2** The district court certified this issue for interlocutory appeal, 28 U.S.C. § 1292(b), and we granted defendants' petition for permission to appeal.

_____

**1** The district court did, however, grant other motions of defendants. It dismissed plaintiffs' claims under the Equal Pay Act, Executive Order No. 11246, and 42 U.S.C. §§ 1985 & 1986. The court also dismissed the Title VII, ADEA, and ADA claims against the individual defendants. And it dismissed the ADEA claims of individual plaintiffs W. Kirb Qualls and Maurice Mathews and the section 1981 claims against defendant Tom Maynard. None of these dismissals is before us.

**2** The district court's judgment with respect to the Title VII, section 1981, and ADEA claims applied to all four of the CBAs in this case. By contrast, its judgment of nonarbitrability with respect to the ADA claims was limited to the effect of the Local 400 CBA. The district court found that the Local 400 CBA did not require the arbitration of ADA claims, and this refusal has been appealed. The arbitrability of ADA claims under the CBAs signed by Locals 639, 730, and 922 is not before us. The district court did not reach the issue under the Local 639 and 922 CBAs. And it found that the Local 730 CBA required the arbitration of ADA claims; that ruling has not been appealed.

II.

The public benefits of arbitration in the collective bargaining context are well known. Arbitration "reflects both our tradition of resolving private sector disputes without public sector interference and a desire to quickly and efficiently resolve labor grievances before they threaten economic progress on a broad front." Westvaco Corp. v. United Paperworkers Int'l Union, Local 1014, 1999 WL 164141, *3 (4th Cir. 1999). The private settlement of labor disputes through arbitration has been a "major factor in achieving industrial peace." United Steelworkers of Am. v. Warrior & Gulf Nav. Co., 363 U.S. 574, 578 (1960).

While arbitration serves important public interests, an agreement to arbitrate -- like any other contract -- is fundamentally about private choice. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Id. at 582. Despite the public benefits of arbitration, the determination of what disputes are arbitrable is focused on the intent of the parties. See AT&T Techs., Inc. v. Communications Workers of Am., 475 U.S. 643, 648-49 (1986) ("[A]rbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration."). Generally, the parties -- not the courts -- control which disputes will be arbitrated.

III.

The initial question presented in this case is who-- a court or an arbitrator -- determines whether each CBA requires the arbitration of plaintiffs' statutory discrimination claims. That is, did the parties agree to arbitrate the very issue of what claims are arbitrable?

Generally, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983); see also Warrior & Gulf, 363 U.S. at 582-83. This presumption, however, does not apply to the issue of which claims are arbitrable. "[T]he general policy-based, federal presumption in favor of arbitration . . . is not applied as a rule of contract interpretation to resolve questions of the arbitrability of arbitrability issues themselves." Virginia Carolina

5

Tools, Inc. v. International Tool Supply, Inc., 984 F.2d 113, 117 (4th Cir. 1993). Thus, "Courts should not assume that the parties agreed to arbitrate arbitrability." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).

The Supreme Court has explained the reasons for this reverse presumption. It has stated that the "willingness of parties to enter into agreements that provide for arbitration of specified disputes would be drastically reduced . . . if a labor arbitrator had the power to determine his own jurisdiction." AT&T Techs., 475 U.S. at 651 (internal quotation marks omitted). And, it has noted that a "party often might not focus upon that question or upon the significance of having arbitrators decide the scope of their own powers." First Options, 514 U.S. at 945.

Nevertheless, the parties can agree to let an arbitrator determine the scope of his own jurisdiction. Their agreement must, however, "clearly and unmistakably" provide that the arbitrator shall determine what disputes the parties agreed to arbitrate. AT&T Techs., 475 U.S. at 649; accord First Options, 514 U.S. at 944 ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." (internal quotation marks omitted)).

Defendants argue that the CBAs here clearly and unmistakably committed arbitrability to arbitration. They note that the CBAs provided for the arbitration of "any grievance or dispute aris[ing] between the parties regarding the terms of this Agreement" and any "controversy, dispute or disagreement . . . concerning the interpretation of the provisions of this Agreement." Because the dispute over whether statutory discrimination claims are arbitrable requires an interpretation of the terms of the CBAs, defendants assert that the parties agreed to resolve this threshold dispute by arbitration. Thus, defendants claim that the parties agreed to arbitrate arbitrability.

We disagree. The "clear and unmistakable" test set forth by the Supreme Court requires more than simply saying that the arbitrator determines the meaning of any disputed contractual terms. The courts have repeatedly rejected the assertion that general arbitration clauses, like the ones at issue here, commit to arbitration disputes over an arbitrator's jurisdiction.

6

For example, in AT&T Technologies, Inc. v. Communications Workers of America, the collective-bargaining contract committed to arbitration all "differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder." 475 U.S. at 645. Still, the Supreme Court held that"It was for the court, not the arbitrator, to decide in the first instance whether the dispute was to be resolved through arbitration." Id. at 651. Similarly, in John Wiley & Sons, Inc. v. Livingston, the Supreme Court addressed a contract providing for the arbitration of "any differences, grievance or dispute between the Employer and the Union arising out of or relating to this agreement, or its interpretation or application, or enforcement." 376 U.S. 543, 553 (1964). Despite this language, the Court itself decided that the union's claims were in fact arbitrable. Id. at 554-55; see also Warrior & Gulf, 363 U.S. at 576, 583 n.7. Elsewhere the Supreme Court has explained that even "`when the parties have agreed to submit all questions of contract interpretation to the arbitrator,'" the judiciary is still "`to ascertain[ ] whether the party seeking arbitration is making a claim which on its face is governed by the contract.'" United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 36-37 (1987) (quoting United Steelworkers of Am. v. American Mfg. Co., 363 U.S. 564, 567-68 (1960)). Thus, broad arbitration clauses that generally commit all interpretive disputes "relating to" or "arising out of" the agreement do not satisfy the clear and unmistakable test.

Cases in this circuit reinforce this point. In Brown v. Trans World Airlines, this court encountered a CBA which required the arbitration of all "disputes between the Union, employee, and the Company growing out of the interpretation or application of any of the terms of this Agreement." 127 F.3d 337, 338 (4th Cir. 1997). In spite of this language, we stated that "The determination of the arbitration provision's scope and meaning is for the court to resolve." Id. at 340. Even broader language was used in Virginia Carolina Tools, Inc. v. International Tool Supply, Inc. The agreement in that case did not even restrict the scope of arbitration to matters of interpretation or differences growing out of the agreement. Instead, it capaciously stated that "Should any dispute arise between the parties they agree to seek resolution through [arbitration]." 984 F.2d at 115. Nonetheless, we noted that

7

> We need not decide if anything short of a specific, express provision, such as "all disputes concerning the arbitrability of particular disputes under this contract are hereby committed to arbitration," would meet[the clear and unmistakable] test. It suffices to say that the typical, broad arbitration clause [like this one] -- which contains nothing approaching such a provision -- does not.

Id. at 117.

The lesson from these cases is that if contracting parties wish to let an arbitrator determine the scope of his own jurisdiction, they must indicate that intent in a clear and specific manner. Expansive general arbitration clauses will not suffice to force the arbitration of arbitrability disputes.

Here, the parties failed to so agree. The four CBAs at issue in this case have broad clauses requiring arbitration to resolve disputes "regarding the terms of this Agreement" and "concerning the interpretation of the provisions of this Agreement." These general clauses are indistinguishable from those at issue in the cases discussed above. Thus, we are compelled to find they do not clearly and unmistakably commit questions of arbitrability to arbitration. A court, not an arbitrator, is to determine whether the parties agreed to arbitrate the statutory discrimination claims at issue here.

We stress, however, that arbitration of arbitrability disputes -- like other contractual matters -- remains a question of the parties' intent. Those who wish to let an arbitrator decide which issues are arbitrable need only state that "all disputes concerning the arbitrability of particular disputes under this contract are hereby committed to arbitration," or words to that clear effect. Absent such clarity, we are compelled to find that disputes over the arbitrability of claims are for judicial resolution.

IV.

We thus proceed to determine whether the parties agreed to arbitrate the discrimination claims arising under Title VII, 42 U.S.C.

8

§ 1981, the ADEA, and the ADA. Like the previous issue, this question is one of contract and is to be resolved by the parties' expressed intentions.

Union-negotiated collective bargaining agreements that require the arbitration of statutory discrimination claims are valid and binding on unionized employees. Austin v. Owens-Brockway Glass Container, Inc., 78 F.3d 875 (4th Cir. 1996). In Austin , we noted that under Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991), employees were free to enter into predispute agreements to arbitrate statutory employment claims. Austin, 78 F.3d at 880-82. And we found no reason to preclude enforcement of such agreements when they were entered into as part of a CBA. "A union has the right and duty to bargain for the terms and conditions of employment. . . . The right to arbitrate is a term or condition of employment, and as such, the union may bargain for this right." Id.  at 885. Agreements to arbitrate statutory claims are "`valid because they rest on the premise of fair representation.'" Id. (quoting Metropolitan Edison Co. v. NLRB, 460 U.S. 693, 705 (1983)). Thus, when a union has agreed to arbitrate statutory claims, "an employee must follow the grievance procedure established by the collective bargaining agreement prior to filing suit in federal court." Id.

Recently, in Wright v. Universal Maritime Service Corp., 119 S. Ct. 391 (1998), the Supreme Court set forth the test required to determine whether there has been a union-negotiated waiver of a judicial forum. There, the Court held that the normal interpretative rule applicable to collective bargaining agreements -- one which presumes a dispute is arbitrable -- does not apply to statutory discrimination claims. Id. at 395-96. Instead, collective bargaining agreements to arbitrate these claims, unlike contracts executed by individuals, must be "clear and unmistakable." Id. at 396.

Defendants argue that the CBAs in this case clearly and unmistakably require arbitration of employee federal discrimination claims. Each of those CBAs contains a specific provision banning discrimination on the basis of race and age. Further, the agreements provide for the arbitration of all disputes "regarding the terms" and "concerning the interpretation of the provisions" of the agreements. Taken

9

together, defendants argue this language clearly and unmistakably provides for the arbitration of statutory discrimination claims.

We disagree. Broad, general language is not sufficient to meet the level of clarity required to effect a waiver in a CBA. In the collective bargaining context, the parties "must be particularly clear" about their intent to arbitrate statutory discrimination claims. Universal Maritime, 119 S. Ct. at 396. Here, the parties were not that clear.

The Supreme Court's opinion in Universal Maritime indicates that the requisite degree of clarity can be achieved by two different approaches. The first is the most straightforward. It simply involves drafting an explicit arbitration clause. Under this approach, the CBA must contain a clear and unmistakable provision under which the employees agree to submit to arbitration all federal causes of action arising out of their employment. Such a clear arbitration clause will suffice to bind the parties to arbitrate claims arising under a host of federal statutes, including Title VII, 42 U.S.C. § 1981, the ADEA, and the ADA.

The second approach is applicable when the arbitration clause is not so clear. General arbitration clauses, such as those referring to "all disputes" or "all disputes concerning the interpretation of the agreement," taken alone do not meet the clear and unmistakable requirement of Universal Maritime. When the parties use such broad but nonspecific language in the arbitration clause, they must include an "explicit incorporation of statutory antidiscrimination requirements" elsewhere in the contract. Universal Maritime , 119 S. Ct. at 396. If another provision, like a nondiscrimination clause, makes it unmistakably clear that the discrimination statutes at issue are part of the agreement, employees will be bound to arbitrate their federal claims.

The CBAs in this case failed to follow either approach. The arbitration clauses in the CBAs state broadly that the parties agree to arbitrate all disputes over the meaning of the agreement. No mention, however, is made of disputes arising under federal law. This sort of general arbitration clause does not satisfy the demand of particular clarity. Nor do the other provisions of the contract persuade us that the plaintiffs' statutory claims have been incorporated into the CBAs. The agreements do contain antidiscrimination provisions stating that

10

the company and the union agree not to discriminate on the basis of race or age. They do not, however, begin to incorporate by reference federal statutory law. The absence of transparency in both the arbitration and nondiscrimination clauses fails to meet the"clear and unmistakable" standard set forth in <u>Universal Maritime</u>. Thus, we hold that the CBAs at issue in this case did not commit to arbitration the resolution of the employees' federal statutory discrimination claims.

V.

Our decision does not seek to undermine private choices about how best to resolve industrial disputes. This case presents two issues which require the parties to use "clear and unmistakable" language expressing a desire to arbitrate. With respect to each, we hold that clear and unmistakable does not mean general language that under ordinary principles of contract interpretation might very well be interpreted to require arbitration. Instead, a CBA must plainly specify the intent to have an arbitrator decide both the scope of his own jurisdiction and the merits of federal statutory discrimination claims. If an agreement does so, the judiciary will give full effect to that intent. The CBAs in this case, however, are simply not clear and unmistakable with respect to these issues. The judgment of the district court is hereby affirmed and the case is remanded for further proceedings consistent with this opinion.

<u>AFFIRMED AND REMANDED</u>

11