**Lori A. SAFRIT, Plaintiff–Appellant,**

**v.**

**CONE MILLS CORPORATION, Defendant–Appellee.**

**No. 99–2677.**

United States Court of Appeals, Fourth Circuit.

Argued Dec. 7, 2000.

Decided April 27, 2001.

**ARGUED:** Nancy Renee Gaines, Salisbury, NC, for Plaintiff–Appellant. Donald Ross Hamilton, Jr., Haynsworth, Baldwin, Johnson & Greaves, L.L.C., Greensboro,

NC, for Defendant–Appellee. **ON BRIEF:** James M. Powell, Haynsworth, Baldwin, Johnson & Greaves, L.L.C., Greensboro, NC, for Defendant–Appellee.

Before WILKINSON, Chief Judge, TRAXLER, Circuit Judge, and CACHERIS, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by published PER CURIAM opinion.

## OPINION

PER CURIAM:

The issue in this case is whether a plaintiff can proceed with a Title VII claim in federal court in the face of a Collective Bargaining Agreement which explicitly states that Title VII claims would be subject to binding arbitration. In accordance with our precedent and the Supreme Court's recent reaffirmation of the validity of arbitration for employment disputes, we affirm the judgment of the district court that plaintiff's claim is subject to arbitration.

### I.

Lori Safrit was employed at Cone Mills' plant in Salisbury, North Carolina since 1982. She was a member of the United Needletrades, Industrial, and Textile Employees Union (UNITE) during her employment. In November 1994, she became a fixer trainee. She was the only female fixer in her class. The defendant allegedly failed to train Safrit properly and denied her job opportunities available to other trainees.

The Collective Bargaining Agreement gave the union, not the employee, the exclusive option to proceed to arbitration. The CBA provided a four-step grievance procedure. If the complaint was still un-resolved after the four steps, the CBA allowed for arbitration. Safrit could not proceed at any level without the union. The union took her case to the fourth step of the grievance process. At this point, Cone Mills agreed to correct the earlier deficiencies in the training program. This corrective measure caused the union to stop pursuing the grievance.

Cone Mills allegedly continued to discriminate against Safrit after the company reached the agreement with the union to correct the deficiencies in the training program. Safrit returned to the union to seek enforcement of the previous agreement and a remedy for the continuing discrimination. The union advised Safrit to seek legal counsel to pursue remedies outside the grievance process. The union did not file a second grievance. Safrit then filed a charge of discrimination with the EEOC. Subsequently, she filed the present complaint, alleging that Cone Mills violated Title VII by discriminating against her based on her sex. At the time the complaint was filed, Safrit was still employed at the plant. The plant has since closed.

Section XX of the CBA specifically stated that the company and the union "agree that they will not discriminate against any employee with regard to race, color, religion, age, sex, national origin or disability.... The parties further agreed [sic] that they will abide by all the requirements of Title VII of the Civil Rights Act of 1964." Section XX further noted, "Unresolved grievances arising under this Section are the proper subjects for arbitration." Cone Mills urged the district court to dismiss the case, arguing that the CBA clearly and unmistakably permitted arbitration as the sole remedy for alleged violations of Title VII.

### II.

The district court granted summary judgment for Cone Mills. It stated that

the Fourth Circuit allows a Collective Bargaining Agreement negotiated by a union on behalf of an employee to validly waive an employee's statutory rights to a federal forum. *See Brown v. ABF Freight Sys., Inc.*, 183 F.3d 319, 321 (4th Cir.1999). The district court also noted that the Supreme Court does not preclude a waiver of the right to a federal forum in a collective bargaining agreement if it is done in "clear and unmistakable" language. *Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 80, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998).

The district court recognized that this court has previously held that a "clear and unmistakable" waiver can occur in two ways. First, the agreement can contain an explicit arbitration clause in which the parties agree to submit to arbitration all federal causes of action arising out of employment. *See Carson v. Giant Food, Inc.*, 175 F.3d 325, 332 (4th Cir.1999). Second, a general clause requiring arbitration under the agreement can be coupled with a provision which makes "unmistakably clear that the discrimination statutes at issue are part of the agreement. . . ." *Id.*

Here, Section XX of the CBA indubitably provides such a clear and unmistakable waiver. Indeed, it is hard to imagine a waiver that would be more definite or absolute. The parties agreed that they would "abide by all the requirements of Title VII" and that "[u]nresolved grievances arising under this Section are the proper subjects for arbitration."

Safrit now argues that her good-faith compliance with the grievance provisions of the governing CBA should preserve her right to pursue claims in a federal forum, especially when the grievance process was inadequate to remedy the discriminatory treatment and when she herself had no control over the further processing of the complaint. But Safrit runs flat against binding Fourth Circuit caselaw on this point. We have already held, post-*Wright*, that a collectively bargained agreement to arbitrate a statutory discrimination claim is enforceable. *See Brown*, 183 F.3d at 321; *Carson*, 175 F.3d at 331. And the Supreme Court itself has recently acknowledged the continuing viability of arbitration claims in the employment context. *See Circuit City Stores, Inc. v. Adams*, —— U.S. ——, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001).

We are, of course, bound to apply our precedent on this point, and to respect the Supreme Court's most recent pronouncement on the subject of arbitration. An agreement to arbitrate statutory claims is part of the natural tradeoff that a union must make in exchange for other benefits. As Judge Widener wrote for the court in *Austin v. Owens–Brockway Glass Container, Inc.*, a "union has the right and duty to bargain for the terms and conditions of employment." *Austin*, 78 F.3d 875, 885 (4th Cir.1996). And since the right to arbitrate is a term or condition of employment, the union may bargain for this right as well. *See id.* (citing *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 923, 1 L.Ed.2d 972 (1957)). The collective bargaining process permits unions to waive the right to strike "and other rights protected under the National Labor Relations Act." *Id.* (citing *Metropolitan Edison Co. v. NLRB*, 460 U.S. 693, 705, 103 S.Ct. 1467, 75 L.Ed.2d 387 (1983)). Indeed, no reason exists for distinguishing between "a union bargaining away the right to strike and a union bargaining for the right to arbitrate." *Austin*, 78 F.3d at 885. In both cases, the union and its members decide that the price of giving up the right to strike or the right to litigate is worth the benefits that they will receive in return.

To redact one clause from the CBA would in effect alter the agreement reached during the often-difficult collective bargaining process. And there is no claim that Safrit's union failed to adequately represent its members during the course of negotiations with Cone Mills or during the grievance process.

### III.

For the foregoing reasons, the judgment of the district court is *AFFIRMED*.