**PINE RIDGE COAL COMPANY,**
Plaintiff,

v.

**Phillip A. LOFTIS, Defendant.**

No. CIV.A. 2:03–0342.

United States District Court,
S.D. West Virginia,
Charleston Division.

July 18, 2003.

C. David Morrison, Jill O. Florio, H. Toney Stroud, and Rodney L. Bean, Steptoe & Johnson, Charleston, Clarksburg, and Morgantown, for Plaintiff Pine Ridge Coal Company.

Timothy R. Conaway, Madison, for Defendant Phillip A. Loftis.

## MEMORANDUM OPINION & ORDER

GOODWIN, District Judge.

Pending are plaintiff Pine Ridge Coal Company's petition to compel arbitration [Docket 4] and defendant Phillip Loftis's motion for summary judgment [Docket 6]. For the following reasons, the court **GRANTS** the plaintiff's petition to compel arbitration, **DENIES** Mr. Loftis's motion for summary judgment, **ORDERS** Mr. Loftis to submit to the grievance-arbitration process all claims asserted in the case of *Loftis v. Pine Ridge Coal Company*, Civ. Act. No. 03–C–23, now pending in Boone County Circuit Court, and **ENJOINS** Mr. Loftis from further prosecuting his claims in state court.

## I. Background

The defendant-respondent in this case, Phillip Loftis, is a former employee of the plaintiff-petitioner, the Pine Ridge Coal Company. Mr. Loftis worked for Pine Ridge, with periods of intermittent layoffs, from 1981 until February 26, 2001, when Pine Ridge terminated his employment due to his physical disabilities. Mr. Loftis was employed by Pine Ridge under the terms of, most recently, the National Bituminous Coal Wage Agreement of 1998 (the Wage Agreement). Mr. Loftis was injured on the job in October of 1999 and applied for and received worker's compensation benefits. As part of his worker's compensation claim, Mr. Loftis was referred to Genex Services, Inc., for vocational rehabilitation services. After some period of treatment, Pine Ridge terminated Mr. Loftis's employment, informing him by letter that "your physical condition is such that it prevents you from returning to your regular work at the mine." (Pet. to Compel Arbitration, Exh. 2.)

Following his termination, Mr. Loftis filed suit on February 20, 2003, in the Circuit Court of Boone County, West Virginia, alleging that Pine Ridge had terminated him in retaliation for his worker's compensation claim and had failed to follow the statutory and regulatory requirements for vocational rehabilitation. (Pet. to Compel Arbitration, Exh. 1.) On April 21, 2003, Pine Ridge, a defendant in that suit, filed suit in this court against Mr. Loftis for breach of the Wage Agreement. Then on May 7, 2003, Pine Ridge filed its petition to compel arbitration and prohibit judicial proceedings. Based on the arbitration provision found in the Wage Agreement, Pine Ridge seeks to require Mr.

Loftis to arbitrate the claims he has raised in his Boone County lawsuit. Pine Ridge bases its suit on § 301 of the Labor Management Relations Act, which provides for a federal cause of action "for breach of a collective-bargaining agreement," 29 U.S.C. § 185, and on the Federal Arbitration Act, which provides that an agreement to arbitrate disputes arising out of a contract "shall be valid, irrevocable and enforceable...." 9 U.S.C. § 2.

## II. Discussion

■ In this case, Mr. Loftis seeks to vindicate his rights, provided by West Virginia statutes, to certain vocational rehabilitation procedures. Pine Ridge, in contrast, seeks to vindicate its contractual rights under the collective bargaining agreement (CBA). In essence, Pine Ridge argues that Mr. Loftis, by way of the CBA, has waived his right to bring the West Virginia statutory claims that he pursues in the Boone County lawsuit. The parties agree that in order for the collective bargaining agreement to have waived Mr. Loftis's right to bring his West Virginia statutory claims, such waiver must be "clear and unmistakable." *Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 80, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998). "Broad, general language is not sufficient to meet the level of clarity required to effect a waiver [of statutory rights] in a CBA." *Carson v. Giant Food, Inc.*, 175 F.3d 325, 331 (4th Cir.1999).

■ Instead, there are two specific ways in which a CBA may effectively waive an employee's statutory rights. First, a CBA may contain "an explicit arbitration clause" providing that "the employees agree to submit to arbitration all federal causes of action arising out of their employment." *Id.* Such a provision, which refers specifically to the statutory causes of action and to their arbitrability, is sufficiently clear to constitute a valid waiver.

Second, the CBA can effect a valid waiver of statutory rights by containing (1) a "[g]eneral arbitration clause[ ] ... referring to 'all disputes' or 'all disputes concerning the interpretation of the agreement,'" and (2) an "explicit incorporation of statutory antidiscrimination requirements elsewhere in the contract." *Id.* at 332 (quotations and citations omitted). Under this approach, the second prong is not satisfied merely because the CBA contains language mirroring that of statutory provisions. *Id.* (holding that it was insufficient that the CBA "contain[ed] antidiscrimination provisions stating that the company and the union agree not to discriminate on the basis of race or age."). Rather, the CBA must make explicit reference to the statutory rights that are incorporated into the agreement. *Id.*

■ Pine Ridge argues that the Wage Agreement in this case satisfies the second method of effectuating a waiver of Mr. Loftis's statutory rights under *Carson*. Article XXIII of the Wage Agreement, titled "Settlement of Disputes," provides that:

Disputes arising under this Agreement shall be resolved as follows: ... [the agreement then provides for three preliminary steps of a grievance procedure, followed by] (4) In cases where the district representative and the representative of the Employer fail to reach agreement, the matter shall, within 10 calendar days after referral to them, be referred to the appropriate district arbitrator who shall decide the case without delay.

(Pet. for Arbitration, Exh. 4, Art. XXIII(c).) In addition, Article XXVII of the Wage Agreement, titled "Maintain Integrity of Contract and Resort to Courts," provides that:

The United Mine Workers of America and the Employers agree and affirm

that, except as provided herein, they will maintain the integrity of this contract and that all disputes and claims which are not settled by agreement shall be settled by the machinery provided in the "Settlement of Disputes" Article of this Agreement . . . .

(Pet. for Arbitration, Exh. 7, Art. XXVII.) The court agrees with Pine Ridge that these provisions constitute a general arbitration clause covering all disputes under the Wage Agreement, thereby satisfying the first part of the *Carson* test.

The next question is whether the Wage Agreement contains an "explicit incorporation" of the statutory requirements that Mr. Loftis seeks to vindicate in his state court lawsuit. *Carson*, 175 F.3d at 332. The Wage Agreement provides that:

> Each Employer who is a party to this Agreement will provide the protection and coverage of the benefits under worker's compensation and occupational disease laws . . . existing in the states in which the respective Employees are employed. Refusal of any Employer to carry out this directive shall be deemed a violation of this Agreement.

(Petition for Arbitration, Exh. 5, Art. III(*l*).) This clause makes clear that an employer's failure to comply with state worker's compensation laws constitutes a breach of the Wage Agreement, and therefore that the relevant state worker's compensation laws have been incorporated into the Wage Agreement. *Cf. Safrit v. Cone Mills Corp.*, 248 F.3d 306, 308 (4th Cir. 2001) (holding that contractual provision that the parties would "abide by all the requirements of Title VII" constituted an explicit incorporation of Title VII into the CBA). Accordingly, the second part of the "clear and unmistakable" test is also satisfied here. Because the Wage Agreement contains a general arbitration clause, clearly requiring all disputes under the Agreement to be submitted to arbitration, along with a specific incorporation of state worker's compensation laws, the Agreement contains a "clear and unmistakable" waiver of an employee's right to bring suit under state worker's compensation laws.

Mr. Loftis argues that if we adopt this reading, the entire state worker's compensation mechanism would be replaced by arbitration. He asks, "Is it seriously maintained that the contract requires that questions of compensability of injury, percentages of disability, need for medical treatment, . . . indeed all the plethora of issues that are decided through the Workers' Compensation process, be submitted to arbitration?" (Loftis Mem. in Supp. of Mot. for Summ. J., at 13.) This argument exaggerates the employer's obligations under the workers' compensation system. Here, Mr. Loftis submitted a workers' compensation claim, which was processed by the state, and was awarded benefits. Pine Ridge, his employer, was not directly involved in this process. When Pine Ridge agreed in the Wage Agreement to "provide the protection and coverage of the benefits under worker's compensation . . . laws," it simply agreed, by way of contract, to perform its statutory obligations. It did not agree to assume the *state's* obligations under the workers' compensation system, and a private contract between two parties can obviously have no effect on the state's own powers or duties under the worker's compensation system. Accordingly, Mr. Loftis's concern is overstated—the arbitration clause does not transfer the entire workers' compensation process to the arbitration system, but at most only Pine Ridge's obligations to its employees under the system.

Mr. Loftis next argues that if the Wage Agreement contains provisions that clearly and unmistakably waive his right to pursue his state statutory claims, those provisions are invalid under W. Va.Code

§ 23–2–7, which provides that "[n]o employer or employee shall exempt himself from the burden or waive the benefits of this chapter [workers' compensation] by any contract, ... and any such contract ... shall be pro tanto void." This argument would have some force, but for the fact that this provision of West Virginia law, as applied to a contractual arbitration agreement, is preempted by § 2 of the Federal Arbitration Act. In *Southland Corp. v. Keating*, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984), the Supreme Court considered a similar provision of California law, which provided that " 'Any condition, stipulation or provision purporting to bind any person acquiring any franchise to waive compliance with any provision of this law or any rule or order hereunder is void.' " 465 U.S. at 10, 104 S.Ct. 852 (quoting Cal. Corp.Code § 31512 (West 1977)). The Court held that this statute, which purported to "require judicial consideration of claims brought under the State statute," "directly conflicts with § 2 of the Federal Arbitration Act and violates the Supremacy Clause." *Id.* The Court explained that through the Federal Arbitration Act Congress had "withdr[awn] the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Id.* Thus, to the extent that W. Va.Code § 23–2–7 would require judicial consideration of claims brought under the state workers' compensation statutes, § 23–2–7 is preempted by § 2 of the Federal Arbitration Act. *See Adkins v. Labor Ready, Inc.,* 303 F.3d 496, 506 (4th Cir.2002) (holding that West Virginia law purporting to bar compulsory arbitration of West Virginia Human Rights Act claims is preempted by federal law).

## III. Conclusion

The Wage Agreement here contains a clear and unmistakable waiver of Mr. Loftis's right to bring his West Virginia statutory worker's compensation claims in federal court, because that Agreement contains both an explicit incorporation of West Virginia worker's compensation laws and a clear provision agreeing to submit all contractual disputes to arbitration. Accordingly, the court **GRANTS** the plaintiff's petition to compel arbitration, **DENIES** Mr. Loftis's motion for summary judgment, **ORDERS** Mr. Loftis to submit to the grievance-arbitration process all claims asserted in the case of *Loftis v. Pine Ridge Coal Company,* Civ. Act. No. 03–C–23, now pending in Boone County Circuit Court, and **ENJOINS** Mr. Loftis from further prosecuting his claims in state court.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party, and **DIRECTS** the Clerk to post this published opinion at *http://www.wvsd.uscourts.gov.*