**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

EASTERN ASSOCIATED COAL
CORPORATION,
                    *Plaintiff-Appellee,*

              v.

GARY D. MASSEY,
                    *Defendant-Appellant.*

───────────────────────

UNITED MINE WORKERS OF AMERICA,
         *Amicus Curiae supporting
                    Appellant.*

No. 03-1991

EASTERN ASSOCIATED COAL
CORPORATION,
                    *Plaintiff-Appellant,*

              v.

GARY D. MASSEY,
                    *Defendant-Appellee.*

───────────────────────

UNITED MINE WORKERS OF AMERICA,
         *Amicus Curiae supporting
                    Appellee.*

No. 03-2012

Appeals from the United States District Court
for the Southern District of West Virginia, at Charleston.
Joseph Robert Goodwin, District Judge.
(CA-03-309)

Argued: May 7, 2004

Decided: July 2, 2004

Before WILKINSON, LUTTIG, and SHEDD, Circuit Judges.

---

Affirmed in part, reversed in part, and remanded by published opinion. Judge Wilkinson wrote the opinion, in which Judge Luttig and Judge Shedd joined.

---

**COUNSEL**

**ARGUED:** Roger Daniel Forman, FORMAN & HUBER, L.C., Charleston, West Virginia, for Appellant/Cross-appellee Gary D. Massey. Charles David Morrison, STEPTOE & JOHNSON, Clarksburg, West Virginia, for Appellee/Cross-appellant Eastern Associated Coal Corporation. **ON BRIEF:** Rodney L. Bean, Jill O. Florio, STEPTOE & JOHNSON, Clarksburg, West Virginia, for Appellee/Cross-appellant Eastern Associated Coal Corporation. Bradley J. Pyles, CRANDALL, PYLES, HAVILAND & TURNER, Logan, West Virginia, for Amicus Curiae United Mine Workers of America.

---

**OPINION**

WILKINSON, Circuit Judge:

Appellant Gary D. Massey filed a complaint in West Virginia state court against his employer, appellee Eastern Associated Coal Corporation, after Eastern terminated him in April 2001. Massey alleged workers' compensation discrimination in violation of the West Virginia Workers' Compensation Act, *see* W. Va. Code §§ 23-5A-1 and 23-4-9 (2002), and disability discrimination in violation of the West Virginia Human Rights Act, *see id.* § 5-11-9(1) ("WVHRA"). Eastern in turn brought suit in federal court, arguing that the collective bargaining agreement ("CBA") that governed Massey's employment — the National Bituminous Coal Wage Agreement (the "Wage Agreement") — required him to arbitrate both state law claims. The district court ruled that the Wage Agreement compelled Massey to arbitrate

his workers' compensation discrimination claims, but that it did not waive his right to sue Eastern for violating the WVHRA. Because we find no clear and unmistakable waiver in the Wage Agreement of Massey's right to bring either statutory claim against Eastern in a judicial forum, we affirm in part and reverse in part. *See Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 80 (1998).

I.

Massey worked as an electrician in a coal mine operated by Eastern in Boone County, West Virginia. In January 2000, Massey was injured while on the job, and he subsequently applied for and received workers' compensation benefits, including vocational rehabilitation benefits. On April 18, 2001, however, Eastern discharged Massey on the ground that his physical condition prevented him from working his job at the mine.

Massey filed suit against Eastern in the Circuit Court of Boone County, West Virginia in January 2003. He claimed that he was discharged on account of his receipt of workers' compensation benefits, including rehabilitation benefits, constituting workers' compensation discrimination and related violations under the West Virginia Workers' Compensation Act. *See* W. Va. Code §§ 23-5A-1 and 23-4-9. Massey further alleged that Eastern discriminated against him on account of his handicap, constituting disability discrimination under the WVHRA. *See id.* § 5-11-9(1).

In response, Eastern brought suit in federal court pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (2000), and the Federal Arbitration Act, 9 U.S.C. § 2 (2000), seeking to compel Massey to arbitrate his pending state law claims. As a member of the United Mine Workers of America ("UMWA"), Massey's employment with Eastern was governed by the Wage Agreement. Eastern asserted that the Wage Agreement precluded Massey from litigating his claims in a judicial forum, and instead committed them to arbitration.

The Wage Agreement establishes a grievance process for resolving disputes between Eastern and the UMWA or its members. In Article XXIII(c), the Wage Agreement provides that "disputes arising under this Agreement shall be resolved" by following three preliminary

steps involving just the employee, the UMWA, and Eastern. Then, "in cases where the [UMWA's] district representative and the representative of [Eastern] fail to reach agreement, the matter shall . . . be referred to the appropriate district arbitrator who shall decide the case without delay." Furthermore, Article XXVII states in relevant part that "all disputes and claims which are not settled by agreement shall be settled by" the grievance process in Article XXIII, and that "the purpose of this provision [is] to provide for the settlement of all such disputes and claims through the machinery in this contract . . . without recourse to the courts."

The Wage Agreement also includes two substantive provisions that are relevant to the arbitrability of Massey's claims. First, Article III(l) is pertinent to Massey's workers' compensation discrimination claims:

> Each employer who is a party to this Agreement will provide the protection and coverage of the benefits under workers' compensation and occupational disease laws, whether compulsory or elective, existing in the states in which the respective Employees are employed. Refusal of any Employer to carry out this directive shall be deemed a violation of this Agreement.

Moreover, a non-discrimination provision in Article XXV is relevant for considering the arbitrability of Massey's WVHRA claims:

> Neither the Employer nor the Union shall discriminate against any Employee or with regard to the terms or availability of classified employment on the basis of race, creed, national origin, sex, age, political activity, whether intra-Union or otherwise. In addition, the Employer and Union agree that they will adhere to applicable provisions of the Vietnam Era Readjustment Assistance Act of 1974, the Rehabilitation Act of 1973, and the Americans With Disabilities Act.

Asserting that these clauses waived Massey's right to litigate his state law claims, Eastern filed a motion to compel arbitration and to enjoin Massey from prosecuting his causes of action in state court.

For his part, Massey filed a motion to dismiss Eastern's federal lawsuit.

The district court was persuaded that Massey was required by the Wage Agreement to arbitrate his claims under the West Virginia Workers' Compensation Act. It therefore enjoined Massey from pursuing these claims further in state court and ordered him to submit them to the Wage Agreement's grievance process. *See also Pine Ridge Coal Co. v. Loftis*, 271 F. Supp. 2d 905, 909 (S.D. W. Va. 2003) (reaching the same conclusion when interpreting the Wage Agreement in a lawsuit brought by another union employee under the same West Virginia anti-discrimination provision). However, the district court held that the Wage Agreement did not prevent Massey from bringing his WVHRA claim in state court, and it therefore dismissed Eastern's complaint as it related to that count. Both parties appeal the district court's judgment, and the UMWA filed an amicus brief supporting Massey's position in the case.[1]

## II.

We have consistently held that a union-negotiated CBA may waive an employee's statutory right to litigate his employment discrimination claims in a judicial forum. *See, e.g.*, *Safrit v. Cone Mills Corp.*, 248 F.3d 306, 308 (4th Cir. 2001). However, the Supreme Court made clear in *Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 80 (1998), that any such waiver must be "clear and unmistakable." While a presumption in favor of arbitration normally governs the interpretation of arbitration clauses in CBAs, this presumption is inapplicable in the context of statutory discrimination claims. *Id.* at 77-79. Waivers of statutory claims in CBAs are subject to a stricter standard, because the right to a judicial forum is so important that it must "be protected against less-than-explicit union waiver." *Id.* at 80. Thus, "in the collective bargaining context, the parties 'must be particularly clear' about their intent to arbitrate statutory discrimination claims." *Carson*

---

[1]The district court also rejected Massey's contention that it should abstain from considering Eastern's federal lawsuit in light of Massey's ongoing state proceedings and the ongoing state litigation of another former employee against Eastern. We find no error on this point.

*v. Giant Food, Inc.*, 175 F.3d 325, 331 (4th Cir. 1999) (quoting *Universal Maritime*, 525 U.S. at 79).

In *Carson*, we outlined two ways in which a waiver in a CBA can meet the clear and unmistakable standard from *Universal Maritime*. *See id.* at 331-32. First, parties can include in a CBA an "explicit arbitration clause," which is a self-contained, "clear and unmistakable provision under which the employees agree to submit to arbitration all [statutory discrimination claims] arising out of their employment." *Id.* at 331. Second, in cases where the arbitration clause is not as specific and instead refers broadly to "all disputes" or "all disputes under this agreement," a CBA may meet the clear and unmistakable requirement by explicitly incorporating the statutory anti-discrimination requirements elsewhere in the contract. *Id.* at 332. Where such a separate provision "makes it unmistakably clear that the discrimination statutes at issue are part of the agreement," we have said that a general arbitration clause would be sufficient to satisfy the strictures of *Universal Maritime*. *Id.*

While it is thus possible to meet the clear and unmistakable waiver standard of *Universal Maritime*, it is not easy. In *Carson*, the arbitration clauses provided generally for arbitration of any disputes regarding the meaning of the CBAs. *See* 175 F.3d at 328, 332. While the various CBAs contained contractual anti-discrimination clauses, none of them specifically incorporated any anti-discrimination statutes. *See id.* at 327-28, 332. Likewise in *Brown v. ABF Freight Sys., Inc.*, 183 F.3d 319, 320 (4th Cir. 1999), the arbitration clause simply referred to "all grievances or questions of interpretation arising under this . . . Agreement." And although the CBA had a fairly elaborate contractual anti-discrimination provision (it parroted in part the language of federal statutes, it stated that the parties would not "engage in any other discriminatory acts prohibited by law," and it specified that it protected employees who qualify as disabled under the Americans with Disabilities Act), this clause also failed to specifically incorporate any anti-discrimination statutes into the CBA. *Id.* at 322-23. In both cases, we held that the CBAs fell short of meeting the clear and unmistakable standard. *See Carson*, 175 F.3d at 332; *Brown*, 183 F.3d at 323. As we observed in *Carson*, "broad, general language is not sufficient to meet the level of clarity required to effect a waiver in a CBA." 175 F.3d at 331.

In *Safrit*, we did find that a CBA met the requisite level of clarity for waiving an employee's right to litigate her Title VII discrimination claim. *See* 248 F.3d at 308. But there, the CBA contained an explicit, self-contained arbitration clause for Title VII claims, declaring that the parties agreed to "abide by all the requirements of Title VII" and, in the same section, that "unresolved grievances arising under this Section are the proper subjects for arbitration." *Id.* Simply put, we have required explicit, unambiguous language to satisfy the standard laid out in *Universal Maritime*.

### III.

It is within this framework that we consider whether Massey was compelled by the Wage Agreement to arbitrate his statutory claims. Eastern makes no claim that the Wage Agreement contains an explicit arbitration clause that would satisfy the first approach in *Carson*. Article XXIII(c) simply provides that "disputes arising under this Agreement shall," after three steps involving the employer, the employee, and the union, be submitted to an arbitrator. And Article XXVII only directs that "all disputes and claims which are not settled by agreement" shall be resolved through arbitration. Thus Eastern cannot rest on an explicit arbitration clause in seeking to satisfy the *Universal Maritime* standard.

Nonetheless, the district court found (and Massey concedes) that Articles XXIII(c) and XXVII are sufficient to constitute a general arbitration clause. The court then held that Article III(l) of the Wage Agreement explicitly incorporates the West Virginia Workers' Compensation Act, thus constituting a clear and unmistakable waiver of Massey's workers' compensation discrimination claims under the second approach outlined in *Carson*. As for Massey's WVHRA claim, the district court ruled that there is no explicit incorporation of the statute in Article XXV of the Wage Agreement, and consequently that Massey could pursue his WVHRA claim in state court. We consider each ruling in turn.

### A.

First, Massey argues that the district court erred in ruling that his workers' compensation discrimination claims must be arbitrated

under the Wage Agreement. As noted above, Article III(l) directs that every "employer who is a party to this Agreement will provide the protection and coverage of the benefits under workers' compensation . . . laws, whether compulsory or elective, existing in the states in which" covered employees are employed. And it further declares that an employer's failure "to carry out this directive shall be deemed a violation of this Agreement." According to the district court, this Article makes clear that Eastern's failure to comply with state workers' compensation laws results in a breach of the Wage Agreement. Thus, the court concluded, the West Virginia Workers' Compensation Act is fully incorporated into the Wage Agreement, and Eastern's alleged failure to comply with the anti-discrimination provisions in that Act could only be resolved through the grievance process.

It is true that one *could* reasonably construe Article III(l), as the district court did, to incorporate into the Wage Agreement the anti-discrimination provision of the West Virginia Workers' Compensation Act. Article III(l) could be read to mean that Eastern is required to give Massey all of the "protection[s] . . . under workers' compensation . . . laws" in West Virginia, which would include the Act's "protection" against discrimination in the receipt of benefits. Under this construction, Massey would indeed be compelled to arbitrate his claims predicated on the Act's anti-discrimination provision.

Yet the UMWA advances another plausible reading of Article III(l). Article III(l) can be interpreted to require Eastern to "provide the protection . . . of the benefits under workers' compensation . . . laws" in West Virginia. Under this construction, Article III(l) mandates simply that signatory employers, such as Eastern, provide the proper amount of benefits to which their employees are entitled under state workers' compensation laws. Indeed, the fact that Article III(l) contemplates that state workers' compensation laws may be "compulsory or elective" — and then makes clear that employers bound by the Wage Agreement *must* provide the relevant benefits — supports this interpretation. But this basic requirement on employers to provide benefits under state workers' compensation laws is not the same as explicitly incorporating into the Wage Agreement the entire West Virginia Workers' Compensation Act, along with its legal rights and remedies for (among other things) discrimination. *See Brown*, 183 F.3d at 322 (holding that for a waiver to explicitly incorporate an anti-

discrimination statute, "a simple agreement not to engage in acts violative of that statute . . . will not suffice," because "the parties must make 'unmistakably clear' their intent to incorporate in their entirety the 'discrimination statutes at issue'") (citations omitted).

Our task here, of course, is not to decide which of these interpretations is the correct one. The fact that there are at least two plausible and competing interpretations of Article III(l) is enough to demonstrate that the Article fails to provide a clear and unmistakable waiver. *See Carson*, 175 F.3d at 332 ("[C]lear and unmistakable does not mean general language that under ordinary principles of contract interpretation might very well be interpreted to require arbitration."). At bottom, Article III(l) requires that Eastern provide its employees with the "protection and coverage of the benefits" under state laws. This *may* be interpreted to include protection against discrimination in the receipt of benefits, but it does not do so clearly and unmistakably. *See Brown*, 183 F.3d at 322. It is not nearly as explicit as the CBA in *Safrit*, in which the same section mandated compliance with Title VII and, further, expressly directed that "unresolved grievances" dealing with such claims "are the proper subjects for arbitration." 248 F.3d at 308. Accordingly, Massey was not compelled by the Wage Agreement to arbitrate his workers' compensation discrimination claims.[2]

## B.

On its cross-appeal, Eastern argues that the district court erred in finding that Massey's WVHRA claim is not committed to arbitration under Article XXV of the Wage Agreement. Yet if the Wage Agreement does not clearly and unmistakably waive Massey's workers' compensation discrimination claims, it certainly does not do so for his

---

[2]Massey advances a number of alternative arguments relating to the district court's ruling that his worker's compensation discrimination claims must be arbitrated. For instance, Massey asserts that he would be unable to vindicate all his statutory remedies in arbitration, and that the district court erred in rejecting Massey's motion for reconsideration based on an affidavit submitted after the close of evidence. Because we find that Massey may pursue his workers' compensation discrimination claim in a judicial forum, we need not address these contentions.

WVHRA claim. The first sentence in Article XXV merely provides that "neither the Employer nor the Union shall discriminate against any Employee . . . on the basis of race, creed, national origin, sex, age, [or] political activity." As we have held, it is not enough for a contractual anti-discrimination clause to loosely approximate the language of anti-discrimination statutes. *See Brown*, 183 F.3d at 322. Such statutory provisions must be explicitly incorporated into the CBA in order to constitute a valid waiver under *Universal Maritime*. *Id.*

But Eastern places heavy reliance on the second sentence in Article XXV, which states that "the Employer and Union agree that they will adhere to applicable provisions of," among other statutes, the Americans with Disabilities Act ("ADA"). Eastern assumes that this clause is sufficiently clear and unmistakable to compel arbitration of all ADA claims. It then argues that, because the WVHRA is the state counterpart to the ADA and is interpreted in the same manner by West Virginia courts and administrative agencies, Article XXV's incorporation of the ADA also constitutes a specific incorporation of the WVHRA.

As an initial matter, it is not clear that West Virginia courts have interpreted the WVHRA as federal courts have construed the ADA. *See Stone v. St. Joseph's Hosp.*, 538 S.E.2d 389, 404 (W. Va. 2000) ("[W]e recognize that the [WVHRA], as created by our Legislature and as applied by our courts and administrative agencies, represents an independent approach to the law of disability discrimination that is not mechanically tied to federal disability discrimination jurisprudence."); *but see id.* at 408-10 (Scott, J., concurring) (disputing the majority's characterization of the relationship between the WVHRA and the ADA, asserting that "the pattern and practice of this Court have been to follow the federal courts' interpretation of various statutory provisions" in discrimination cases).

Regardless, if we entertain Eastern's assumptions that the ADA is explicitly incorporated into the Wage Agreement in Article XXV, and further that the WVHRA is treated similarly to the ADA, this does not mean that there is a clear and unmistakable waiver of WVHRA claims. The standard enunciated in *Universal Maritime* makes clear that a valid waiver must explicitly incorporate the anti-discrimination

statute at issue. *See Universal Maritime*, 525 U.S. at 79-81; *Carson*, 175 F.3d at 332. It is insufficient, then, for a waiver provision to incorporate one statute into a CBA by referring to another, independently created (though analogous) statute.

Sensing the lack of textual support for its position, Eastern protests that we must not ignore the intent of the parties in Article XXV. It would make no sense, Eastern contends, to construe the parties as having decided to handle all ADA claims through the grievance process but to leave the state courts open to hear ADA-like claims under the WVHRA. This contention misses the point. Even if Eastern could offer more than speculation as to what the parties intended when agreeing to Article XXV, it is "the parties' *expressed* intentions" that control our inquiry into whether there was a clear and unmistakable waiver. *Carson*, 175 F.3d at 331 (emphasis added). Here, the language unquestionably fails to provide such a clear and unmistakable waiver of Massey's WVHRA claim. Massey was therefore entitled to pursue his disability discrimination claim in state court.

IV.

For the foregoing reasons, the judgment of the district court is affirmed in part and reversed in part. We remand with directions that Eastern's suit be dismissed.

*AFFIRMED IN PART, REVERSED IN PART,*
*AND REMANDED.*