**EASTERN ASSOCIATED COAL CORP, and Brad Hibbs, Plaintiffs,**

v.

**Gary D. MUNSON Defendant.**

**No. CIV.A. 1:02CV79.**

United States District Court, N.D. West Virginia.

Feb. 28, 2003.

Rodney L. Bean, Steptoe & Johnson, Morgantown, WV, C. David Morrison, Steptoe & Johnson, Clarksburg, WV, for Plaintiffs Eastern Associated Coal Corporation and Brad Hibbs.

Jacques R. Williams, Hamstead, Hamstead & Williams, Morgantown, WV, for Defendant Gary D. Munson.

### ORDER

KEELEY, District Judge.

Before the Court are the motions to dismiss, for summary judgment, and to abstain of defendant Gary D. Munson. Also pending before the Court are the plaintiffs' motions to compel arbitration and to prohibit judicial proceedings. For the reasons that follow, the Court **DENIES** the defendant's motions and **GRANTS** the plaintiffs' motions.

### I.

### STATEMENT OF FACTS

The defendant, Gary D. Munson ("Munson"), was hired by the plaintiff, Eastern Associated Coal Corp. ("Eastern") in 1972 as a general laborer at its Federal No. 2 Mine in Monongalia County, West Virginia.

In 1998, Eastern and International Union, United Mine Workers of America (the "Union"), entered into a collective bargaining agreement entitled the National Bituminous Coal Wage Agreement ("Wage Agreement"). The Wage Agreement provided for arbitration of employee discharges.

In 1999, Eastern discharged Munson for missing work. Munson was a Union member, and the Wage Agreement was in effect at the time of his discharge. Munson did not arbitrate the decision to terminate him; instead, on November 30, 2001, he filed a lawsuit in the Circuit Court of Monongalia County, West Virginia alleging

wrongful discharge. Munson describes his state court action as a "Harless-type" claim[1] and contends that he was fired in retaliation for informing "appropriate government mine health and safety agencies about safety concerns" at the mine where he worked. Munson's state court complaint further alleged that plaintiff Brad Hibbs ("Hibbs") was Eastern's operation's manager at the mine and made the actual decision to terminate him.

Plaintiffs Eastern and Hibbs filed the present case on May 31, 2002 pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1–16 (the "FAA").

The plaintiffs seek (i) a declaration that the arbitration provision is valid and enforceable, (ii) an order from the Court that Munson dismiss his state court lawsuit, (iii) an order from the Court that Munson pursue his claims, "if at all," through the grievance-arbitration process, (iv) an order closing this case pending the results of arbitration, and (v) an order awarding attorneys' fees.

On July 3, 2002, Munson filed a motion to dismiss and for summary judgment, and an alternative motion for abstention. The plaintiffs responded to the motions and also filed a motion to compel arbitration and to prohibit judicial proceedings. The issues have been fully briefed and are ready for decision.

## II.

### JURISDICTION

Before moving to the merits of the case, it is first necessary to recite this Court's basis for jurisdiction. Although the plaintiffs brought this suit pursuant to the FAA, that statute does not itself provide a basis of federal question jurisdiction; instead, subject matter jurisdiction for an FAA claim in federal court must rest on some independent basis. *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir.1991). Here, the plaintiffs correctly state that an independent basis for their lawsuit is provided by § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (the "LMRA"). *Id.* ("Section 301 of the LMRA provides a federal remedy for breach of a collective-bargaining agreement...."). In *Groves v. Ring Screw Works*, 498 U.S. 168, 172, 111 S.Ct. 498, 112 L.Ed.2d 508 (1990), the Supreme Court reiterated that "[s]ection 301(a) of the LMRA provides a federal remedy for breach of a collective-bargaining agreement ... § 301 authorizes suits by and against individual employees as well as between unions and employers ...." *Id.* (internal quotation omitted); *see Textile Workers Union of America v. Lincoln Mills of Alabama*, 353 U.S. 448, 456, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957) (holding that § 301(a) of LMRA authorizes federal courts to fashion a body of federal law for the enforcement of collective bargaining

---

1. *Harless v. First Nat'l Bank in Fairmont*, 162 W.Va. 116, 246 S.E.2d 270, 275 (1978) ("We conceive that the rule giving the employer the absolute right to discharge an at will employee must be tempered by the further principle that where the employer's motivation for the discharge contravenes some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by the discharge.").

Munson identifies the following language from the Act as the substantial public policy violated by Eastern: "the first priority and concern of all in the ... mining industry must be the health and safety of its most precious resource-the miner." 30 U.S.C. § 801. The Act goes on to state that "the operators of [the Nation's] mines with the assistance of the miners have the primary responsibility to prevent the existence of [unsafe and unhealthful conditions and practices in the Nation's] mines." *Id.* Munson further cites § 22A–1–22 of the West Virginia Code which prohibits discrimination against a coal miner who reports a safety violation or danger.

agreements, without regard to diversity of citizenship or amount in controversy).

Here, Eastern is not asking the Court to decide the merits of Munson's wrongful discharge claim, but rather the scope of the arbitration provision contained in his employment contract. Nevertheless, because the dispute concerns enforcement of a collective-bargaining agreement and the defendant's alleged breach of that agreement, the Court's jurisdiction is well grounded in § 301 of the LMRA.

### III.

### *ANALYSIS*

In response to Eastern's demand to arbitrate his claim, Munson argues, generally, that (1) the Wage Agreement does not require him to arbitrate his claim, and (2) the Court should abstain from deciding the arbitration question. Because the arbitrability issue is only reached if the Court exercises its jurisdiction, the Court will first discuss the question of abstention.

### A.

### *Abstention*

The Fourth Circuit has recognized that a district court has a duty to adjudicate a controversy properly before it, but that, under exceptional circumstances, a district court may abstain "for reasons of wise judicial administration." *New Beckley Mining Corp. v. International Union,* 946 F.2d 1072, 1073 (4th Cir.1991) (citation omitted).

Munson urges the Court to follow the policy of abstention enunciated by the Supreme Court in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and interpreted by the Fourth Circuit in *Employers Resource Management Co., Inc. v. Shannon,* 65 F.3d 1126, 1134–35 (4th Cir.1995). Eastern and Hibbs, on the other hand, argue that the applicable abstention standard is found in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), as later refined in *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

■ When coercive relief is sought, such as to compel arbitration, *Colorado River–Moses H. Cone* is the correct standard to apply. *Safety Nat'l Cas. Corp. v. Bristol–Myers Squibb Co.,* 214 F.3d 562, 564 (5th Cir.2000); *see TranSouth Fin. Corp. v. Bell,* 149 F.3d 1292, 1296 n. 1 (11th Cir.1998) (finding that no compelling state interest existed to trigger *Younger* abstention when plaintiff sought to enforce federal arbitration rights under the FAA).

■ Under the *Colorado River–Moses H. Cone* abstention doctrine, a district court should consider six factors when determining whether a federal suit falls within the "extraordinary and narrow exception" that warrants its dismissal because of the presence of a concurrent state proceeding. *Colorado River,* 424 U.S. at 817, 96 S.Ct. 1236. Those factors rest on considerations of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.* They are:

(1) assumption by either court of jurisdiction over a res;

(2) the relative inconvenience of the forums;

(3) the avoidance of piecemeal litigation;

(4) the order in which jurisdiction was obtained by the concurrent forums;

(5) whether and to what extent federal law provides the rules of decision on the merits; and

(6) the adequacy of the state proceedings in protecting the rights of the party invoking jurisdiction.

*Moses H. Cone,* 460 U.S. at 15–16, 23–26, 103 S.Ct. 927.

The first two factors are not at issue in this case. Regarding the third factor, piecemeal litigation, the Supreme Court has held that it is not applicable in arbitration disputes because an arbitrability dispute is easily severable from the merits of the underlying controversy. *Moses H. Cone,* 460 U.S. at 20–21, 103 S.Ct. 927. The Fourth Circuit has added that "[o]nly in the most extraordinary circumstances ... may federal courts abstain from exercising jurisdiction in order to avoid piecemeal litigation." *New Beckley Mining Corp.,* 946 F.2d at 1074 (citation omitted).

As to the fourth factor, although Munson initiated his state action before the plaintiffs filed their complaint in this Court, the Supreme Court has explained that "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone,* 460 U.S. at 21, 103 S.Ct. 927. According to a proposed scheduling order entered in the state action, pre-trial discovery is to be completed by January 31, 2003 and trial is set to begin March 4, 2003. Activity in federal court has been limited to the filing of the parties' motions addressed by this Order.

The fifth factor, concerning whether federal law provides the rule of decision on the merits, counsels against abstention in this case. The issue before this Court is arbitrability, a decision governed exclusively by the FAA.

Finally, as to the sixth factor, the plaintiffs concede that they could have sought an order compelling arbitration in Munson's state court action. They cite to a Fifth Circuit case, however, in which the court concluded that "even where the state court can adequately protect all parties, this fact can only be a neutral factor or one

that weighs against ... abstention." *Safety Nat'l Cas. Corp.,* 214 F.3d at 566 (citation omitted).

■ Before weighing the *Colorado River–Moses H. Cone* factors here, it is useful to recall that the purpose of the balance "is not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist 'exceptional' *circumstances* ... to justify the *surrender* of that jurisdiction." *Moses H. Cone,* 460 U.S. at 25, 103 S.Ct. 927 (emphasis in original). When viewed from this perspective, the factors in play in this case do not rise to a level warranting dismissal of the federal action. In fact, the sole factor arguably supporting abstention is the fact that the state suit is further along than the instant suit. Without more, this fails to tip a scale that is, from the start, heavily weighted in favor of exercising jurisdiction. *Id.* at 16, 103 S.Ct. 927; *see Whiteside v. Teltech Corp.,* 940 F.2d 99, 102 (4th Cir.1991) (holding that absent exceptional circumstances, a federal district court has no right to stay the federal proceedings brought under the FAA even though a similar action between the parties was pending in state court).

The Court concludes that Munson has failed to show exceptional circumstances that justify surrendering jurisdiction, and next turns to the question of arbitration.

## B.

### *Arbitration*

In response to Eastern's demand to arbitrate Munson's claim, Munson argues that his claim is not subject to arbitration because (1) his claim is exempt from arbitration under the Wage Agreement between Eastern and the Union; (2) his claim is not a dispute arising under the Wage Agreement; and (3) the Wage

Agreement does not include language requiring arbitration of a wrongful discharge claim. Each of Munson's arguments will be discussed in turn.

## 1.
### *The Claim is Not Exempt from Arbitration*

■ First, Munson argues his claim is exempt from arbitration and, in aid of this proposition, points to the following language in the Wage Agreement: "[N]either party [to the Wage Agreement] waives nor repudiates any ... judicial rights under or relating to the Federal Mine Safety and Health Act [the 'Act'] ...." Munson contends that, because his state law claim is based on public policy contained in the Act, the Wage Agreement's preservation of "judicial rights under or related to" the Act exempts his wrongful discharge claim from arbitration. In particular, Munson argues that mandating arbitration would force him to sacrifice "the full array of procedural rights including discovery, trial by jury, and appellate review."

The United States Supreme Court, however, has concluded that "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991); *Austin v. Owens–Brockway Glass Container, Inc.*, 78 F.3d 875, 880 (4th Cir.1996) (same). Moreover, the Fourth Circuit has held that the "loss of the right to a jury trial is a necessary and fairly obvious consequence of an agreement to arbitrate." *Snowden v. CheckPoint Check Cashing,*

290 F.3d 631, 638 (4th Cir.2002) (citation omitted).

Thus, by protecting "judicial rights," the Wage Agreement is simply stating that the signatories do not waive claims they otherwise might bring under or related to the Act. The forum in which these claims are heard, however, can be arbitral rather than judicial. *See Gilmer,* 500 U.S. at 30, 111 S.Ct. 1647 (criticizing attacks on the adequacy of arbitration procedures and recognizing a "strong endorsement of the federal statutes favoring this method of resolving disputes").

## 2.
### *The Claim is a Dispute Arising Under the Wage Agreement*

■ Munson next contends that his wrongful discharge claim is not a "dispute arising under [the Wage Agreement]," and therefore is not subject to arbitration. Munson concedes that his absenteeism gave Eastern à colorable basis for terminating him; nevertheless, he wants a state court to decide whether there was an illegal motivating factor behind his termination. Munson draws a distinction between his discharge and the reasons for his discharge, concluding that only the former is governed by the Wage Agreement.

The Wage Agreement, however, not only addressed termination and disputes regarding safety issues, but also directed an arbitrator to determine whether an employer established just cause for termination.[2] Thus, the Wage Agreement empowered an arbitrator to look into the reasons for a discharge—precisely the issue Munson contends must be decided by a court. Accordingly, Munson's alleged

---

2. Section (d), Article XXIV of the Wage Agreement, provides that "[i]f the arbitrator determines that the Employer has failed to establish just cause for the Employee's discharge, the Employee shall be immediately reinstated to his job. If the arbitrator determines that there was just cause for the discharge, the discharge shall become effective upon the date of the arbitrator's decision."

wrongful termination is a "dispute arising under [the Wage Agreement]" and is governed by its provisions.

### 3.

### *The Wage Agreement Requires Arbitration of the Claim*

Finally, Munson argues the language of the Wage Agreement does not require arbitration of a *Harless*-type claim.

 The Fourth Circuit has previously held that a collective bargaining agreement negotiated by a union on behalf of an employee may validly waive an employee's statutory rights to a federal forum. *Carson v. Giant Food, Inc.*, 175 F.3d 325, 331 (4th Cir.1999). To determine whether there has been a union-negotiated waiver of a judicial forum, a court must consider the test set forth by the Supreme Court in *Wright v. Universal Maritime Service Corp.*, 525 U.S. 70, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998), which requires a waiver to be "clear and unmistakable."[3] *Carson*, 175 F.3d at 331 (*citing Wright*, 525 U.S. at 80, 119 S.Ct. 391).

 A "clear and unmistakable" waiver can occur in the following two ways:

"First, the agreement can contain an explicit arbitration clause in which the parties agree to submit to arbitration all federal causes of action arising out of employment. Second, a general clause requiring arbitration under the agreement can be coupled with a provision which makes 'unmistakably clear that the ... statutes at issue are part of the agreement ....'"

---

**3.** In the present case, neither party suggests that the decision whether Munson's claim is arbitrable should be left to an arbitrator. Moreover, there is no language in the Wage Agreement that would overcome the presumption that courts, rather than arbitrators,

*Safrit v. Cone Mills Corp.*, 248 F.3d 306, 308 (4th Cir.2001) (*quoting Wright*, 525 U.S. at 80, 119 S.Ct. 391). Accordingly, a court must look to the language of the collective bargaining agreement to determine the existence of a valid waiver.

### a.

 Eastern contends that Article III, Section (p) of the Wage Agreement provides the "clear and unmistakable" language necessary to compel arbitration:

When a dispute arises at the mine involving health or safety, an immediate, earnest and sincere effort shall be made to resolve the matter through the following [arbitration process] ....

In *Safrit*, the Fourth Circuit held that a clear and unmistakable waiver was provided by language in the collective bargaining agreement which stated that the parties agreed to "abide by all the requirements of Title VII" and that "[u]nresolved grievances arising under this Section are the proper subjects for arbitration." *Id.* at 308. On the other hand, the *Carson* court explained that general arbitration clauses, such as those referring to "all disputes" or "all disputes concerning the interpretation of the agreement," do not meet the clear and unmistakable requirement. *Carson*, 175 F.3d at 332.

Here, the language of Section (p) of the Wage Agreement is sufficiently clear and unmistakable to constitute an explicit arbitration clause. Section (p) is not a general, catch-all clause that attempts to require arbitration of "all disputes" such as the clause at issue in *Carson*. Instead, it contemplates a specific type of dispute, name-

---

are to decide which issues are arbitrable. *Carson*, 175 F.3d at 330. Thus, based on the absence of clear language to the contrary in the Wage Agreement, this Court concludes that disputes over the arbitrability of Munson's claim are for judicial resolution.

ly those concerning health and safety at the mine; in doing so, it resembles the arbitration clause in *Safrit* that focused on Title VII discrimination disputes. The Fourth Circuit found that clause to constitute a clear and unmistakable waiver. Munson's "*Harless*-type claim" alleges that Eastern wrongfully discharged him for reporting mine safety violations to government officials. Section (p) of the Wage Agreement was tailored to encompass just such a claim and, thus, "clearly and unmistakably" requires that Munson pursue his claim through arbitration.

b.

■ In addition to an explicit arbitration clause, Eastern may compel Munson to arbitrate his claim if the Wage Agreement contains a general arbitration clause along with another provision that incorporates Munson's claim into the agreement. *Carson*, 175 F.3d at 325. The additional provision must make it unmistakably clear that the asserted claim is covered by the agreement. *Id.*

■ The combination of provisions in the Wage Agreement that might provide the requisite specificity begins with the following general provisions: "Disputes arising under this Agreement shall be resolved [by the following grievance procedure]" (Art. XXIII, § (c)), and "[the Union] and the Employers agree and affirm that ... all disputes and claims which are not settled by agreement shall be settled by the [grievance procedure] ...." (Art. XXVII). Eastern argues that when the preceding general provisions are combined

with the following more specific provision from Article III, it is unmistakably clear that Munson's claim is subject to arbitration: "[T]he parties agree to comply fully with all lawful notices and orders issued pursuant to the Federal Mine Safety and Health Act ... and pursuant to the various state mining laws." (Article III, § (a)).

In *Wright*, the Supreme Court considered the following clause in a collective bargaining agreement: "It is the intention and purpose of all parties hereto that no provision or part of this Agreement shall be violative of any Federal or State Law." *Wright*, 525 U.S. at 81, 119 S.Ct. 391. The Supreme Court concluded that this phrase did not make the statutory basis of the plaintiff's claim (the Americans with Disabilities Act) a contractual commitment that would be subject to the collective bargaining agreement's general arbitration clause. *Id.*

On the other hand, in *Safrit*, the Fourth Circuit considered an employee's Title VII sex discrimination claim, and found that a collective bargaining agreement in which the parties agreed to "abide by all the requirements of Title VII," and that stated "[u]nresolved grievances arising under this Section are the proper subject for arbitration," was an "indubitably" clear and unmistakable waiver of the plaintiff's discrimination claim.[4] *Safrit*, 248 F.3d at 307–08.

In the present case, an additional provision contained in Article III makes it unmistakably clear that Munson's claim is covered by the Wage Agreement. First,

---

**4.** Munson directs the court to an additional Fourth Circuit case, *Austin v. Owens–Brockway Glass Container, Inc.*, 78 F.3d 875 (4th Cir.1996), in which the court concluded that an employee was contractually obligated to submit her discrimination claims to arbitration where a collective bargaining agreement specifically provided that claims of gender and disability discrimination were subject to a grievance procedure. *Id.* at 879–80. Although the Fourth Circuit would likely reach a similar conclusion today, *Austin* was decided before the Supreme Court's decision in *Wright* and, therefore, the *Austin* court did not analyze the issue under the "clear and unmistakable" standard set forth in *Wright*. Accordingly, *Austin's* guidance is limited.

The language from Article III does more than the disputed provision in *Wright*, which merely restated the obvious: that the agreement should not be interpreted so as to violate the law. *Wright*, 525 U.S. at 81, 119 S.Ct. 391. In contrast, when incorporating external law, the Wage Agreement in the instant case specifically adopted federal and state laws *related to mining*. Moreover, the Wage Agreement explained that these particular laws were being incorporated because the parties recognized the importance of the health and safety of miners—the precise subject which Munson alleges led to his termination.

Second, the language in Article III makes it unmistakably clear that Munson's claim is covered by the Wage Agreement because, by incorporating both the Federal Mine Safety and Health Act and West Virginia's mining laws, Article III incorporated into the Wage Agreement the two bodies of law that provide the substantial public policy on which, according to his own pleadings, Munson's *Harless* claim is based. The Wage Agreement, therefore, specifically named the statutory basis of Munson's claim.

In sum, the Wage Agreement provides both an explicit arbitration clause and a general arbitration clause coupled with a more specific provision. Thus, Eastern may compel Munson to arbitrate his claim because the Wage Agreement, through two independent bases, satisfies the "clear and unmistakable" standard necessary to waive a judicial forum.[5]

## IV.

### CONCLUSION

Based on the foregoing, the Court **DENIES** Munson's motions to dismiss (Docket no. 4), for summary judgment (Docket no. 4), and to abstain (Docket no. 4). The Court **GRANTS** the plaintiffs' motion compelling Munson to pursue his claim against the plaintiffs, if at all, in the grievance-arbitration procedure (Docket no. 6), and also **GRANTS** the plaintiffs' motion to enjoin Munson from further prosecuting his state court action (Docket no. 6).

**It is so ORDERED.**

The Clerk is directed to transmit copies of this Order to counsel of record and to the Circuit Clerk of Monongalia County, West Virginia by United States mail and *facsimile*.

---

5. The Court's decision to compel arbitration is reinforced by the general rule that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone,* 460 U.S. at 24–25, 103 S.Ct. 927.