600 S.E.2d 583

**STATE of West Virginia ex rel. Erik P. Wells, Petitioner,**

v.

**The Honorable James A. MATISH, Judge of the Circuit Court of Harrison County, and WBOY–TV, a WV LLC, Respondents.**

No. 31684.

Supreme Court of Appeals of West Virginia.

Submitted March 30, 2004.

Decided May 7, 2004.

Dissenting Opinion of Justice McGraw July 21, 2004.

McGraw, J., dissented and filed opinion.

Michael J. Florio, Esq., Florio Law Offices, Clarksburg, for Erik P. Wells.

Ricklin Brown, Esq., Mark H. Dellinger, Esq., Bowles Rice McDavid Graff & Love, Charleston, for WBOY–TV, a WV LLC.

PER CURIAM:

This case is before this Court upon a petition for a writ of prohibition filed by the petitioner, Erik P. Wells, against the respondents, the Honorable James A. Matish, Judge of the Circuit Court of Harrison County and WBOY–TV, a WV LLC. Mr. Wells seeks to prohibit Judge Matish from requiring him to submit two of his four pending claims in his underlying civil action against his employer, WBOY–TV, to arbitration. The petitioner argues that the costs of arbitration are prohibitive; that WBOY–TV misrepresented the costs of arbitration when his contract was negotiated; and that arbitrators are neither qualified nor authorized to determine the validity of his public policy violation claims.

This Court has before it the petition for a writ of prohibition and the responses thereto. For the reasons set forth below, the writ is denied.

## I.

## FACTS

Mr. Wells entered into a written contract for employment as a news anchor with WBOY–TV on June 19, 2002. Pursuant to the contract, Mr. Wells' term of employment is four years, beginning on July 1, 2002 and ending on July 1, 2006. Mr. Wells' wife, Natalie Tennant, also a news anchor, entered into a similar contract with WBOY–TV at the same time.[1] However, on August 25, 2003,

---

**1.** According to WBOY–TV, Mr. Wells and Ms.    Tennant conditioned their employment on both

Ms. Tennant commenced an unpaid leave of absence in order to campaign and run for the office of West Virginia Secretary of State. Subsequently, WBOY–TV placed Mr. Wells on an involuntary, unpaid leave of absence.[2]

On September 2, 2003, Mr. Wells filed the underlying action against WBOY–TV, and its parent corporation, West Virginia Media Holdings, LLC. Mr. Wells asserted breach of contract, public policy violations, and defamation claims against WBOY–TV. He further alleged tortious interference with business relations and defamation claims against West Virginia Media Holdings. Finally, he sought a declaratory judgment with regard to the validity of the arbitration provision and covenants not to compete contained in his employment contract.

On September 18, 2003, WBOY–TV and West Virginia Media Holdings filed a "Motion to Compel Arbitration and to Stay Further Judicial Proceedings." A hearing on the motion was held on October 10, 2003. Thereafter, the court entered an order granting, in part, and denying, in part, the motion and requiring the parties to participate in arbitration. The Court ruled that only Mr. Wells' claims regarding tortious interference with business relations and defamation were not subject to arbitration. This petition for a writ of prohibition followed.

## II.

### STANDARD FOR ISSUING A WRIT OF PROHIBITION

■■■ This Court has held that "[p]rohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for [a petition for appeal] or certiorari." Syllabus Point 1, *Crawford v. Taylor*, 138 W.Va. 207, 75 S.E.2d 370 (1953).

In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syllabus Point 4, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996). With these standards in mind, we now address the issues in this case.

## III.

### DISCUSSION

Mr. Wells argues that the arbitration clause in his employment contract[3] should be

of them being hired as a husband and wife news anchor team.

**2.** Mr. Wells claims that WBOY–TV told him on August 6, 2003, that his employment would continue subject to certain restrictions regarding his newscast responsibilities notwithstanding his wife's candidacy for West Virginia Secretary of State. WBOY–TV disputes Mr. Wells' contention and asserts that Mr. Wells was informed that if his wife took an unpaid leave of absence for the purpose of exploring the possibility of running for the office of West Virginia Secretary of State,

he would likewise be required to take an unpaid leave of absence.

**3.** Mr. Wells' contract provides:

Any dispute between the parties arising out of or with respect to this Agreement or any of its provisions or Employee's employment with Employer shall be resolved by the sole and exclusive remedy of binding arbitration. The arbitration shall be conducted in Charleston, West Virginia under the auspices of, and in accordance with the rules of the American Arbitration Association. Any decision issued

disregarded for three reasons. First, he claims that the costs of arbitration place an unreasonable financial burden upon him. Secondly, he claims that WBOY–TV grossly misrepresented the costs of arbitration during his contract negotiations in order to induce him to sign the agreement, and therefore, as a matter of equity, the clause should be ignored. Finally, he argues that his public policy violation claims cannot be arbitrated. We consider each argument in turn below.

■ Before doing so, however, we note that:

It is presumed that an arbitration provision in a written contract was bargained for and that arbitration was intended to be the exclusive means of resolving disputes arising under the contract; however, where a party alleges that the arbitration provision was unconscionable or was thrust upon him because he was unwary and taken advantage of, or that the contract was one of adhesion, the question of whether an arbitration provision was bargained for and valid is a matter of law for the court to determine by reference to the entire contract, the nature of the contracting parties, and the nature of the undertakings covered by the contract.

Syllabus Point 3, *Board of Education of the County of Berkeley v. W. Harley Miller, Inc.*, 160 W.Va. 473, 236 S.E.2d 439 (1977).

### A. Whether Arbitration is Cost Prohibitive

As set forth above, Mr. Wells first claims that he cannot afford the costs of arbitrating his claims. According to Mr. Wells, the American Arbitration Association's National Rules for the Resolution of Employment Disputes[4] (hereinafter "AAA's National Rules") requires him to pay $2,250.00 for the privilege of arbitrating his claims based upon the terms of his contract alone. He further asserts that when his emotional distress damages and punitive damages are added to his overall claim, the fee will be at least $4000.00 and could be as much as $8,500.00. Mr.

Wells argues that these costs render the arbitration clause in his contract unconscionable, and therefore, unenforceable, pursuant to this Court's decision in *State ex rel. Dunlap v. Berger*, 211 W.Va. 549, 567 S.E.2d 265 (2002).

■ In Syllabus Point 4 of *Dunlap*, this Court held:

Provisions in a contract of adhesion that if applied would impose unreasonably burdensome costs upon or would have a substantial deterrent effect upon a person seeking to enforce and vindicate rights and protections or to obtain statutory or common-law relief and remedies that are afforded by or arise under state law that exists for the benefit and protection of the public, are unconscionable; unless the court determines that exceptional circumstances exist that make the provisions conscionable. In any challenge to such a provision, the responsibility of showing the costs likely to be imposed by the application of such a provision is upon the party challenging the provision; the issue of whether the costs would impose an unconscionably impermissible burden or deterrent is for the court.

Having carefully considered Mr. Wells' contract and the circumstances surrounding the formation thereof, we believe his reliance upon *Dunlap* is misplaced. That case involved a consumer, James Dunlap, who filed suit against a jewelry retailer alleging that the store engaged in an unconscionable scheme to charge customers for credit life insurance, credit disability insurance, and property insurance when they financed their purchases. Mr. Dunlap claimed that when he purchased and financed a ring from the store, he was not told that he was being charged for the different types of insurances, but instead was instructed to sign a two-page purchasing and financing agreement. Once he discovered the extra charges, he filed suit. Subsequently, the circuit court stayed the proceedings and required the parties to sub-

---

by an arbitrator in accordance with this provision shall be final and binding on the parties thereto and not subject to appeal or civil litigation.

**4.** The American Arbitration Association's National Rules for the Resolution of Employment Disputes can be found at http://www.adr.org.

mit to arbitration pursuant to the arbitration clause which was included in the purchasing and financing agreement signed by Mr. Dunlap.

As an initial matter, this Court observed in *Dunlap* that the financing agreement was a "contract of adhesion." In other words, a pre-printed form contract prepared by one of the parties, in this case, the jewelry retailer. We noted that the form was difficult to comprehend and that "the pre-printed parts of the document would probably be seen by the average person as legal gobbledygook." 211 W.Va. at 553–54, n. 2, 567 S.E.2d at 269–70, n. 2. Ultimately, this Court determined in *Dunlap* that the language in the financing agreement which prohibited punitive damages and class action relief was unconscionable, and therefore, the arbitration clause was unenforceable.

■ The contract involved in the case at bar is substantially different. Although the contract was prepared by WBOY–TV, it is clear that the terms were negotiated, and the agreement was customized to accommodate Mr. Wells' unique circumstances including his naval reserve duty. Furthermore, it cannot be said that Mr. Wells was an unsophisticated party who was forced to sign a form contract. Rather, Mr. Wells was an experienced anchor and reporter who, along with his wife, actively and jointly negotiated his employment agreement. Mr. Wells was given the opportunity to examine the agreement at home and modifications were made after his overnight review. While the arbitration clause may not have been subject to alteration, there is no evidence that Mr. Wells was under any duress to sign this or any other contract. He was employed at another news station while he was negotiating this employment contract.

■ In light of these facts, we are unable to find that the employment contract at issue in this case was one of adhesion like that in *Dunlap*. Moreover, Mr. Wells has simply not shown that arbitration would be prohibitively expensive. As set forth above, the burden of proving excessive costs is upon the party challenging the arbitration provision. Syllabus Point 4, *Dunlap*.

In *Dunlap*, we found that "Mr. Dunlap's contentions as to the cost of arbitration ... [were] at best speculative and not well-supported in the record." 211 W.Va. at 567, 567 S.E.2d at 283. Thus, we were not persuaded by his "excessive costs" argument. *Id.* The United States Supreme Court has also rejected such arguments where the record contains virtually no information regarding the costs of arbitration. *See Green Tree Financial Corp.–Alabama v. Randolph,* 531 U.S. 79, 91, 121 S.Ct. 513, 522, 148 L.Ed.2d 373, 383–84 (2000) ("The record reveals only the arbitration agreement's silence on the subject, and that fact alone is plainly insufficient to render it unenforceable. The 'risk' that [respondent] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement.").

In this case, Mr. Wells' employment contract specifies that arbitration "shall be conducted in Charleston, West Virginia, under the auspices of, and in accordance with the rules of the American Arbitration Association" but is silent with regard to costs.[5] Also, Rule 34(d) of AAA's National Rules states that "[t]he arbitrator shall, in the award, assess arbitration fees, expenses, and compensation ... in favor of any party, and in the event any administrative fees or expenses are due the AAA, in favor of the AAA." In light of these facts, Mr. Wells' assertion that his costs could be as much as $8,500.00 is not supported by the record and is simply speculative at this point. Consequently, we find no merit to Mr. Wells' contention that he should not have to submit his claims to arbitration because of the excessive costs thereof.

### B. Whether the Costs of Arbitration were Misrepresented

■ We also find no merit to Mr. Wells' claim that the arbitration agreement should be set aside because WBOY–TV misrepresented the costs of arbitration during his contract negotiations. In that regard, Mr. Wells says that WBOY–TV told him that arbitration was cheaper than litigation in an

5. *See* note 3, *supra.*

effort to induce him to accept this term of the contract. He reasons that WBOY–TV should not be "rewarded" for "duping him" into believing that it is less costly to resolve any dispute via arbitration.

We reject Mr. Wells' argument because several courts, including the United States Supreme Court, have made express findings regarding the benefits and financial savings associated with the arbitration of employment disputes. In *Circuit City Stores Inc. v. Adams,* 532 U.S. 105, 123, 121 S.Ct. 1302, 1313, 149 L.Ed.2d 234, 252 (2001), the Court observed that, "Arbitration agreements allow parties to avoid the costs of litigation, a benefit that may be of particular importance in employment litigation, which often involves smaller sums of money than disputes concerning commercial contracts." Similarly, the United States Court of Appeals for the Fourth Circuit, has stated that " '[t]he arbitration of disputes enables parties to avoid the costs associated with pursuing a judicial resolution of their grievances. By one estimate, litigating a typical employment dispute costs at least $50,000 and takes two and one-half years to resolve.' " *Bradford v. Rockwell Semiconductor Systems, Inc.,* 238 F.3d 549, 552 (4th Cir.2001) (internal citation omitted). In light of these pronouncements, we are unable to find any merit to Mr. Wells' argument that the costs of arbitration as compared to litigation were misrepresented by WBOY–TV.

*C. Resolution of Public Policy Claims Through Arbitration*

■■■■ Finally, Mr. Wells contends that his public policy violation claims must be decided by a court in the first instance and not an arbitrator. As noted above, Mr. Wells asserted in his complaint that the actions taken by WBOY–TV against him constituted multiple violations of West Virginia public policy. Mr. Wells bases his claim on this Court's holding in the Syllabus of *Harless v. First Nat'l Bank in Fairmont,* 162 W.Va. 116, 246 S.E.2d 270 (1978), which states that:

> The rule that an employer has an absolute right to discharge an at will employee must be tempered by the principle that

where the employer's motivation for the discharge is to contravene some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by this discharge.

Mr. Wells contends that the *"Harless* cause of action" has developed over the years, and this Court has recognized that the question of what constitutes a "substantial public policy principle" must be decided on a case-by-case basis. *Citing Birthisel v. Tri-Cities Health Services Corp.,* 188 W.Va. 371, 375, 424 S.E.2d 606, 610 (1992) ("The question of what constitutes a 'substantial public policy principle' as applied to our retaliatory discharge law is not subject to a precise answer. It has not been set out in any Syllabus Point in our retaliatory discharge cases."). Thus, Mr. Wells reasons that such a decision must be made by a circuit court in the first instance and not an arbitrator.

Essentially, Mr. Wells argues that only elected judges are capable of determining whether a termination of employment runs afoul of substantial public policy. However, he provides no authority to support in his contention. To the contrary, WBOY–TV points out that in *Eastern Associated Coal Corp. v. Munson,* 266 F.Supp.2d 479 (N.D.W.Va.2003), the Court found that a *Harless* claim was subject to arbitration. That decision was based upon the express language of the arbitration provision. 266 F.Supp.2d at 488.

■■■■ The arbitration provision at issue here says that "any dispute" that arises between the parties as a result of the employment contract or Mr. Wells' employment with WBOY–TV is subject to "the sole and exclusive remedy of binding arbitration." [6] In *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765, 785 (1983), the United States Supreme Court declared that "[t]he [Federal] Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitra-

6. See note 3, *supra.*

**694**

tion[.]" [7] Accordingly, we find no merit to Mr. Wells' contention that his public policy violation claims cannot be arbitrated. We would note that pursuant to Rule 11 of AAA's National Rules, "Arbitrators ... shall be experienced in the field of employment law." Also, Rule 34 of AAA's National Rules provides that "[t]he arbitrator may grant any remedy or relief that the arbitrator deems just and equitable, including any remedy or relief that would have been available to the parties had the matter been heard in court." Consequently, as the circuit court noted in its order, Mr. Wells "will not forgo any substantive rights afforded him under either statutory or common law" simply because his claim is arbitrated.

## IV.

## CONCLUSION

■ Based on all of the above, we are unable to find that the arbitration provision contained in Mr. Wells' employment contract is unconscionable. Having considered the entire contract, the nature of the contracting parties, and the undertakings covered by the contract, we conclude that the arbitration provision is valid and enforceable as a matter of law. Accordingly, the writ requested is hereby denied.

Writ denied.

Justice MCGRAW dissents and reserves the right to file a dissenting opinion.

McGRAW, Justice, dissenting.

(Filed July 21, 2004)

I dissent from the majority because, in my view, it presumes that Petitioner is well-schooled in the area of contract negotiations simply because he "was an experienced anchor and reporter" who "was given the opportunity to examine the agreement at home and modifications were made after his overnight review." Petitioner's particularized knowledge and expertise in the field of broadcasting is one thing; however, absent any evidence to the contrary, the majority's conclusion that Petitioner was equally experienced and sophisticated in the law is too great a leap. For this reason, I respectfully dissent.

---

**7.** The Federal Arbitration Act clearly applies in this case. *See Allied–Bruce Terminix Cos., Inc. v. Dobson,* 513 U.S. 265, 272, 115 S.Ct. 834, 838, 130 L.Ed.2d 753, 763 (1995) ("[T]he Federal Arbitration Act pre-empts state law ... state courts cannot apply state statutes that invalidate arbitration agreements."); *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001) (holding that only contracts of employment involving transportation workers are exempt from the Federal Arbitration Act).