609 S.E.2d 855

**State ex rel. CITY HOLDING COMPANY, Petitioner,**

v.

**The Honorable Tod J. KAUFMAN, Judge of the Circuit Court of Kanawha County, and Larry L. Dawson, Respondents.**

**No. 31783.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 28, 2004.

Decided Nov. 12, 2004.

Ancil G. Ramey, Esq., Hannah B. Curry, Esq., Steptoe & Johnson, PLLC, Charleston, West Virginia, Attorneys for the Petitioner.

Roger D. Hunter, Esq., Neely & Hunter, Charleston, West Virginia, Attorney for the Respondent, Larry L. Dawson.

PER CURIAM:

The petitioner herein, City Holding Company [hereinafter referred to as "City Holding"], requests this Court to issue a writ of prohibition to prevent the respondent herein, the Honorable Tod J. Kaufman, Judge of the Circuit Court of Kanawha County [hereinafter referred to as "Judge Kaufman"], from enforcing his order denying City Holding's motion to dismiss and enjoining pending arbitration proceedings. Upon a review of the parties' arguments and the pertinent authorities, we deny the writ of prohibition.

## I.

### FACTUAL AND PROCEDURAL HISTORY

Larry L. Dawson, respondent herein [hereinafter referred to as "Mr. Dawson"] is a former employee of City Holding. During his employment, a dispute arose between the two parties. In lieu of termination, Mr. Dawson agreed to resign and entered into a negotiated settlement, which was memorialized in a contract on or about November 15, 2000, known as a "Severance Agreement and General Release" [hereinafter referred to as "Severance Agreement"].[1]

The dispute in this case does not stem from Mr. Dawson's termination from City Holding, but rather from Mr. Dawson's attempts to exercise previously-issued stock options. Pursuant to Mr. Dawson's employment with City Holding, he had been issued a series of stock options in 1997, 1998, and 1999. On October 20, 2000, the effective date of Mr. Dawson's resignation, City Holding stock was trading well below Mr. Dawson's

---

1. The relevant language of the Severance Agreement is set out in Section III, *infra*.

stock option prices. Mr. Dawson did not exercise any stock options at that time because the option prices were greater than the market price. Instead, he negotiated for the preservation of his stock option rights by having a carve-out provision inserted into the Severance Agreement.[2]

Thereafter, Mr. Dawson devised a plan to surrender his options and convert them into cash. Mr. Dawson wanted to surrender his options without purchasing any stock from the company as set forth in the option agreements of 1997, 1998, and 1999. Mr. Dawson's plan called for his tender of certain stock options, without payment of the option price, and conversion of his remaining shares to market price. His plan then called for his surrender of the converted shares and his receipt of $107,955.25 from City Holding.

City Holding rejected Mr. Dawson's plan for the surrender of his stock options. On January 8, 2003, Mr. Dawson filed suit in the Circuit Court of Kanawha County alleging breach of contract, negligence or gross negligence, violations of the West Virginia Uniform Securities Act, fraud, and promissory estoppel in connection with the three stock option awards.

In response to Mr. Dawson's commencement of a civil suit, City Holding filed a "Demand and Complaint for Arbitration" with the American Arbitration Association. The parties agreed, with Mr. Dawson reserving his objections to arbitration, upon the Honorable A. Andrew MacQueen as arbitrator. City Holding also filed a "Motion to Dismiss or, in the Alternative, to Stay Pending Arbitration," in the Circuit Court of Kanawha County. A hearing was held on April 19, 2004, and Judge Kaufman denied the motion to dismiss and enjoined the pending arbitration proceedings. City Holding thereafter filed this prohibition action.

## II.

## STANDARD FOR ISSUING A WRIT OF PROHIBITION

■ The question presented by this petition is whether City Holding is entitled to the writ of prohibition it requests. When determining whether a writ of prohibition should issue, we consider the following factors as espoused in Syllabus point 4 of *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996):

[i]n determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Mindful of these standards, we proceed to consider the parties' arguments.

## III.

## DISCUSSION

■ The sole issue before this Court is whether the binding arbitration clause of the Severance Agreement applies to the parties' dispute over Mr. Dawson's attempted exercise of his stock options. The circuit court concluded that the binding arbitration provision of the Severance Agreement did not apply to Mr. Dawson's stock options. City Holding contends that Mr. Dawson's claim is based upon conduct which preceded his resignation and is therefore subject to the Severance Agreement and must be arbitrated.

---

**2.** For the relevant language of the Severance Agreement, see Section III, *infra*.

598

■ A principal contention of City Holding is that the Federal Arbitration Act requires this case be arbitrated. The relevant portion of the Federal Arbitration Act provides:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (1947). The Federal Arbitration Act applies to an agreement to arbitrate, and the determination as to whether all of the claims are referable to arbitration is a matter governed by application of federal law. *Pioneer Props., Inc. v. Martin*, 557 F.Supp. 1354 (D.Kan.1983), *appeal dismissed*, 776 F.2d 888 (10th Cir.1985). Determination of the scope of an agreement falling within the ambit of the Federal Arbitration Act is governed by federal law. *McPheeters v. McGinn, Smith & Co., Inc.*, 953 F.2d 771 (2d Cir.1992). In determining whether the language of an agreement to arbitrate covers a particular controversy, the federal policy favoring arbitration of disputes requires that a court construe liberally the arbitration clauses to find that they cover disputes reasonably contemplated by the language and to resolve doubts in favor of arbitration. 9 U.S.C. § 1, *et seq.; Metro Indus. Painting Corp. v. Terminal Constr. Co.*, 287 F.2d 382, 385 (2d Cir.1961); *Accord Hart v. Orion Ins. Co.*, 453 F.2d 1358 (10th Cir.1971); *Coudert v. Paine Webber Jackson & Curtis*, 543 F.Supp. 122 (D.Conn.1982), *overruled on other grounds by Coudert v. Paine Webber Jackson & Curtis*, 705 F.2d 78 (2d Cir.1983); *PAS–EBS v. Group Health, Inc.*, 442 F.Supp. 937 (S.D.N.Y.1977); *State ex rel. Wells v. Matish*, 215 W.Va. 686, 693, 600 S.E.2d 583, 590 (2004) (per curiam).

■ The applicable law makes clear that the Federal Arbitration Act applies to agreements to arbitrate and does not apply to any contract or any provision of a contract that excludes arbitration. *See AT & T Techs., Inc., v. Communications Workers of America*, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (holding that the arbitration clause does not cover disputes specifically excluded by contract language); *Choice Hotels Int'l, Inc., v. BSR Tropicana Resort, Inc.*, 252 F.3d 707 (4th Cir.2001) (determining collection action exemption to arbitration agreement to be valid); *Long–Airdox Co. v. International Union United Auto. Aerospace & Agric. Implement Workers of America (UAW), Local 772*, 622 F.2d 70 (4th Cir.1980) (recognizing validity of exclusion from arbitration of no-strike clause of collective bargaining agreement). "Parties are only bound to arbitrate those issues that by clear language they have agreed to arbitrate; arbitration agreements will not be extended by construction or implication." *Daimler Chrysler Corp. v. Franklin*, 814 N.E.2d 281 (Ind.Ct. App.2004) (citing *Showboat Marina Casino P'ship v. Tonn & Blank Constr.*, 790 N.E.2d 595 (Ind.Ct.App.2003)).

■ This Court has held where parties have bargained for arbitration, the arbitration provision is binding and enforceable on all causes of action arising under the contract that, by the contract terms, are made arbitrable. *See generally Board of Educ. of the County of Berkeley v. W. Harley Miller, Inc.*, 160 W.Va. 473, 236 S.E.2d 439 (1977). Our case law requires that a party must assent to arbitration before it can be forced into arbitration and denied access to the courts. *State ex rel. United Asphalt Suppliers, Inc. v. Sanders*, 204 W.Va. 23, 27–28, 511 S.E.2d 134, 138–39 (1998).

■ In view of the above, this Court must examine the contract in this case. This Court has previously held "[t]he mere fact that parties do not agree to the construction of a contract does not render it ambiguous. The question as to whether a contract is ambiguous is a question of law to be determined by the court." Syl. pt. 1, *Berkeley County Pub. Serv. Dist. v. Vitro Corp. of America*, 152 W.Va. 252, 162 S.E.2d 189 (1968). Furthermore, "[c]ontract language is considered ambiguous where an agreement's

terms are inconsistent on their face or where the phraseology can support reasonable differences of opinion as to the meaning of words employed and obligations undertaken." Syl. pt. 6, *State ex rel. Frazier & Oxley, L.C. v. Cummings*, 212 W.Va. 275, 569 S.E.2d 796 (2002).

Turning to the facts of the instant case, the Severance Agreement, at paragraph 4, provides that Mr. Dawson

> voluntarily and knowingly releases and discharges (a) City Holding Company … from all claims, liabilities, demands, and causes of action, known or unknown, fixed or contingent, which he may have, or claim to have, against them as a result of and/or relating to his employment and separation from employment and does hereby agree not to assert any such claim against any of them.

Further, at paragraph 9, the Severance Agreement provides that

> [i]n the event either party files a claim against the other, which each agrees not to do, then such a claim or claims will be resolved in accordance with the then existing rules of the American Arbitration Association in Charleston, West Virginia, as the exclusive remedy for such dispute and instead of any court or administrative action, which is expressly waived. The parties fully understand that it is comprehensive and covers any and all disputes between the parties including, but not limited to, any claims based on alleged violations of this Severance Agreement and General Release, Dawson's employment or separation therefrom.

Mr. Dawson negotiated separately for the preservation of his stock option rights in the Severance Agreement which sets forth his rights as follows at paragraph 8:

> [t]he parties understand and agree that no provisions of this Severance Agreement and Release of All Claims shall affect the rights of either party under City Holding Company's 1993 Stock Incentive Plan and/or any and all stock options previously awarded by the Company to Dawson.

City Holding argues that this Court should apply its recent decision in *State ex rel. Wells v. Matish*, 215 W.Va. 686, 600 S.E.2d 583 (2004) (per curiam), to find the present arbitration clause valid and enforceable. *Wells* discussed and reiterated the validity and enforceability, in general, of arbitration agreements. *See generally Wells, id.* While *Wells* represents this Court's holdings on arbitration agreements, it does not automatically validate all arbitration agreements. *See id.* (finding that an arbitration provision can be invalid in situations of unconscionable contract provisions or contracts of adhesion). City Holding contends that the application of *Wells* validates the present arbitration agreement and mandates the arbitration of the current stock option dispute. City Holding's argument is unpersuasive in light of the carve-out provision contained in the present agreement.

In *Wells*, the arbitration provision stated that "any dispute" that arises between the parties as a result of the employment contract is subject to "the sole and exclusive remedy of binding arbitration." *Wells*, 215 W.Va. at 693, 600 S.E.2d at 590. The arbitration provision in the present case similarly provides that any "claim or claims will be resolved in accordance with the then existing rules of the American Arbitration Association in Charleston, West Virginia, as the exclusive remedy for such dispute." The difference in the *Wells* case and the present case is the existence of a carve-out provision. The Severance Agreement in the present case provides that "no provisions of this Severance Agreement and Release of All Claims shall affect the rights of either party under City Holding Company's 1993 Stock Incentive Plan and/or any and all stock options previously awarded by the Company to Dawson." Such a carve-out provision is not present in the *Wells* case.

The carve-out provision clearly states that "*no* provisions" of the Severance Agreement "shall affect the rights of either party under City Holding Company's 1993 Stock Incentive Plan and/or any and all stock options previously awarded by the Company to Dawson." (Emphasis added). The language is clear and unambiguous and effectively removes the stock options from the scope of the arbitration clause of the Severance

**600**

Agreement. To interpret the language of the contract any other way would be inconsistent with the plain and unambiguous language of the carve-out provision.

## IV.

## CONCLUSION

Based on all of the above, we find that the arbitration clause contained within the Severance Agreement does not apply to the stock options. Accordingly, the writ requested is denied.

Writ denied.

Justice McGRAW dissents.