No. 18-0605 —     *TD Auto Finance v. Reynolds*

**FILED**
**April 10, 2020**
**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Jenkins, Justice, dissenting:

By affirming the circuit court's order refusing to enforce an arbitration agreement that was executed by the purchasers of a vehicle during the course of the purchase, the majority has misconstrued the plain facts, ignored the applicable burden of proof, and wrongly decided this case. Therefore, I respectfully dissent.

The majority opinion erroneously accepts the flawed argument of the petitioners, Fred and Shelby Reynolds ("the Reynoldses"), that the merger clause that was included in the Retail Installment Sale Contract ("RISC") supplants the credit application and the arbitration contract it contained. In doing so, the majority opinion acknowledged, but failed to apply, the following principle:

> "Separate written instruments will be construed together and considered to constitute one transaction where the parties and the subject matter are the same, and where there is clearly a relationship between the documents." Syllabus point 3, *McCartney v. Coberly*, ___ W. Va. ___, 250 S.E.2d 777 (1978), *overruled on other grounds by* Syllabus point 2, *Overfield v. Collins*, 199 W. Va. 27, 483 S.E.2d 27 (1996).

Syl. pt. 1, *McDaniel v. Kleiss*, 202 W. Va. 272, 503 S.E.2d 840 (1998). Under this holding, the arbitration contract included in the credit application executed by the Reynoldses was part of the transaction for their purchase of the vehicle and should have been enforced.

1

Although nothing in the holding from *McDaniel v. Kleiss* requires that the documents be executed contemporaneously, the majority added this requirement and then used it to avoid construing the credit application and RISC together, even though a clear relationship between the documents existed.  The majority found the documents were not "contemporaneously" executed because the credit application necessarily must be executed before the RISC.  This splitting hairs rationale ignores the simple facts of this case.

It is undisputed that the credit application, which contained the arbitration contract, was executed by the Reynoldses and submitted to TD Auto Finance.  Although the RISC was signed by the Reynoldses and a representative of Crossroads Chevrolet, LLC., Crossroads assigned its interest in the RISC to TD Auto Finance, thus the contracting parties were the same.  The credit application and RISC were executed on the same day and both furthered the Reynoldses' purchase of a vehicle from Crossroads Chevrolet.  Under these facts, and in light of the strong public policy favoring arbitration under both state and federal law,[1] the arbitration agreement should have been enforced.  Indeed, other courts have enforced an arbitration contract that was included in one document that was part of a larger transaction despite the fact that another document that was part of the same

---

[1] *See*, *e.g.*, *Atl. Credit & Fin. Special Fin. Unit, LLC v. Stacy*, No. 17-0615, 2018 WL 5310172, at *5 (W. Va. Oct. 26, 2018) (memorandum decision) (acknowledging "the strong and liberal public policy favoring arbitration under the Federal Arbitration Act, 9 U.S.C. §§ 1 – 307[.]"); *Parsons v. Halliburton Energy Servs., Inc.*, 237 W. Va. 138, 146, 785 S.E.2d 844, 852 (2016) (observing that "[b]oth federal and state laws reflect a strong public policy recognizing arbitration as an expeditious and relatively inexpensive forum for dispute resolution.").

transaction contained a merger clause.[2]  To find otherwise ignores the nature of the transaction.  As one court has observed with respect to a transaction for the purchase of an automobile where one of the documents executed contained a merger clause:

> [T]he parties in the present case signed numerous documents . . . such as . . . a "Credit Application, [an] Agreement to Purchase Insurance, . . . [an] Odometer Disclosure Statement and other necessary documents . . . ." If we were to conclude that the RISC constitutes the only and complete agreement of the parties, execution of these other documents would be rendered nugatory.  Such a result would fail to effectuate the intent the parties clearly expressed by executing the various agreements together.

*Najera v. David Stanley Chevrolet, Inc.*, 406 P.3d 592, 597 (Okla. Civ. App. 2017) (footnote omitted).

In this case there simply was no evidence presented to warrant treating the credit application as anything other than a part of the automobile purchase transaction.  Once TD

---

[2] *See*, *e.g.*, *Johnson ex rel. Johnson v. JF Enterprises, LLC*, 400 S.W.3d 763, 768 (Mo. 2013) ("The order in which documents are signed is irrelevant where, as here, the circumstances demonstrate that they were part of a single transaction. Under the general rule that contemporaneously signed documents relating to one subject matter or transaction are construed together, the parties intended to give effect to all the documents Ms. Johnson executed in her purchase of the vehicle.  Because there is no evidence of contrary intent, this Court considers the purchase documents together to determine the parties' intent as to the scope of the merger clause and of the arbitration agreement."); *Wells Fargo Auto Fin., Inc. v. Wright*, 304 Ga. App. 621, 698 S.E.2d 17 (2010) (enforcing arbitration agreement executed as part of automobile purchase despite merger clause in retail installment contract executed as part of same transaction).

Auto Finance produced prima facie evidence of the agreement to arbitrate,[3] the burden

shifted to the Reynoldses, as the parties opposing arbitration, to show the agreement was

not enforceable:

> "The party moving to compel arbitration 'must make a prima
> facie initial showing that an agreement to arbitrate existed
> before *the burden shifts to the party opposing arbitration to put
> the making of that agreement in issue.*'" *Begonja v. Vornado
> Realty Tr.*, 159 F. Supp. 3d 402, 409 (S.D.N.Y. 2016) (quoting
> [*Hines*] *v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir.
> 2010)).

*Chang v. United Healthcare*, No. 19-CV-3529 (RA), 2020 WL 1140701, at *3 (S.D.N.Y.

Mar. 9, 2020) (emphasis added).[4]  *See, e.g.*, *State ex rel. Wells v. Matish*, 215 W. Va. 686,

---

[3] The burden of establishing prima facie evidence of an agreement to arbitrate is a light one.  "A party 'me[ets] the prima facie burden by providing copies of [a] written and signed agreement[] to arbitrate.'"  *MHC Kenworth-Knoxville/Nashville v. M & H Trucking, LLC*, 392 S.W.3d 903, 906 (Ky. 2013) (quoting *Louisville Peterbilt, Inc. v. Cox*, 132 S.W.3d 850, 857 (Ky. 2004).  "This does not require the movant to show the 'agreement would be *enforceable*, merely that one existed.'"  *Chang v. United Healthcare*, No. 19-CV-3529 (RA), 2020 WL 1140701, at *3 (S.D.N.Y. Mar. 9, 2020) (quoting *Begonja v. Vornado Realty Tr.*, 159 F. Supp. 3d 402, 409 (S.D.N.Y. 2016)).

[4] *See also Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91, 121 S. Ct. 513, 522, 148 L. Ed. 2d 373 (2000) ("[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration."); *Harrington v. Atl. Sounding Co.,* 602 F.3d 113, 124 (2d Cir. 2010) ("A party to an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid."); *Mounts v. Midland Funding LLC*, 257 F. Supp. 3d 930, 936 (E.D. Tenn. 2017) ("The burden is on the party opposing arbitration to show that the agreement is not enforceable."); *Arnold v. Owensboro Health Facilities, L.P.*, No. 4:15-CV-00104-JHM, 2016 WL 502061, at *3 (W.D. Ky. 2016) ("[T]he party seeking to compel arbitration has the initial burden of establishing the existence of a valid agreement to arbitrate, but once prima facie evidence of the agreement has been presented, the burden shifts to the party opposing arbitration."); *Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 499-500 (Tex. 2015) ("[O]nce it is established that a valid arbitration agreement exists and that the claims in question are within the scope of the agreement, a

692, 600 S.E.2d 583, 589 (2004) (observing that "the burden of proving excessive costs is upon the party challenging the arbitration provision."); Syl. pt. 4, *State ex rel. Dunlap v. Berger*, 211 W. Va. 549, 567 S.E.2d 265 (2002) (same). The Reynoldses failed to meet their heavy burden. "The party seeking to avoid the arbitration agreement has a heavy burden." *Louisville Peterbilt, Inc. v. Cox*, 132 S.W.3d 850, 857 (Ky. 2004).

The appendix record for this appeal includes a credit application that was executed by the Reynoldses in connection with their purchase of a vehicle from Crossroads Chevrolet. The credit application contained a highly visible paragraph that used bold and all uppercase lettering and alerted the Reynoldses that the arbitration clause contained therein would apply if the application was submitted to TD Auto Finance. By signing the application, the Reynoldses acknowledged that they had read and understood the arbitration contract. More importantly, they agreed to arbitrate "[a]ny claim or dispute, whether in contract, tort or otherwise . . ., which arises out of or *relates to* this application and important Contract of Arbitration, *any installment sale contract or lease agreement, or any resulting transaction or relationship* . . . ." (Emphasis added). The Reynoldses then executed the RISC and financed the purchase of their vehicle. They eventually defaulted on their loan and, in their suit filed in the circuit court, sought damages arising from the efforts of TD Auto Finance to collect the debt.

---

presumption arises in favor of arbitrating those claims and *the party opposing arbitration has the burden to prove a defense to arbitration.*" (emphasis added)).

TD Auto Finance plainly made its prima facie case by producing the arbitration contract agreed to by the Reynoldses, which broadly applied to any dispute that "relates to"[5] the credit application, including "any installment sale contract." Even the majority opinion concludes that, "[u]nder the credit application, there is a clear agreement to arbitrate with TD Auto Finance . . . ." Once TD Auto Finance met its prima facie case, the burden shifted to the Reynoldses to establish that the arbitration contract was not enforceable. Because they failed to meet this burden, the arbitration agreement should have been enforced.

For the reasons explained above, I respectfully dissent. I am authorized to state that Chief Justice Armstead joins me in this dissenting opinion.

---

[5] "Terms such as 'relating to' and 'in connection with' have been afforded exceptionally broad meaning by this Court." *Elk Run Coal Co., Inc. v. Canopius U.S. Ins., Inc.*, 235 W. Va. 513, 521 n.10, 775 S.E.2d 65, 73 n.10 (2015). *See also Contractors Ass'n of W. Va. v. W. Va. Dep't of Pub. Safety, Div. of Pub. Safety*, 189 W. Va. 685, 697, 434 S.E.2d 357, 369 (1993) ("The ordinary meaning of 'relating to' is that there is a connection between two subjects, not that the subjects have to be the same.").