# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**November 8, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**C.S.,**
**Plaintiff Below, Petitioner**

**vs.) No. 22-ICA-141**        (Cir. Ct. Berkeley Cnty. No. CC-02-2021-C-359)

**STEVEN GROW, DONALD FISHEL,**
**CHRIS JENSEN, SANDRALEE JENSEN,**
**MATTHEW WHITCOMB, DON WRYE,**
**ANTHONY NAEGLE, and**
**CHRISTOPHER MICHAEL JENSEN,**
**Defendants Below, Respondents**


## MEMORANDUM DECISION

Petitioner C.S. appeals the July 20, 2022, order of the Circuit Court of Berkeley County, West Virginia, which denied in part and granted in part his Rule 59(e) Motion to Alter the Court's Order of June 7, 2022, or, in the Alternative, Request for Certification under Rule 54(b). Respondents Christopher Michael Jensen ("Michael Jensen"), Donald Fishel, Steven Grow,[1] Christopher Jensen ("Chris Jensen"), Sandralee Jensen, Matthew Whitcomb, Donald Wrye, and Anthony Naegle filed timely responses.[2] The Church of Jesus Christ of Latter-Day Saints ("CHC") did not participate.[3] C.S. did not file a reply. The issue on appeal is whether the circuit court erred in denying C.S.'s request that the court change its June 7, 2022, order that granted the motion to dismiss his claims.

---

[1] Petitioner did not name Donald Fishel or Steven Grow in his notice of appeal or in the caption of his brief. These respondents indicated their assumption that this was an inadvertent error and that Petitioner intended to include them as they are referenced in the substance of his brief and were named defendants below.

[2] Petitioner is represented by Christian J. Riddell, Esq. Respondent Michael Jensen is represented by Guardian ad Litem T. Nicole Saunders-Meske, Esq. Respondents Donald Fishel and Steven Grow are represented by William J. Powell, Esq., Allen M. Gardner, Esq., and Sarah M. Gragert, Esq. Respondents Chris Jensen and Sandralee Jensen are represented by John J. Polak, Esq. Respondents Matthew Whitcomb, Donald Wrye, and Anthony Naegle are represented by Thomas J. Hurney, Jr., Esq. and Blair E. Wessels, Esq.

[3] Petitioner included The Church of Jesus Christ of Latter-Day Saints in his Notice of Appeal, but also indicated that he did not appeal the decision below as to CHC.

1

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' written and oral arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

This case arises out of sexual abuse allegations against Respondent Michael Jensen made by C.S. and others. In 2007, the mother of two young boys asked then-sixteen-year-old Michael Jensen to babysit. While babysitting the children, he sexually abused them. The children did not report the sexual abuse until 2012. Following a jury trial in 2013, Michael Jensen was found guilty of sexual assault in the first degree and two felony counts of sexual abuse by a parent, guardian, custodian, or person in a position of trust. He is currently incarcerated.

In late 2013, several minor children and their parents, including C.S., filed suit and alleged that CHC and its agents knew that Michael Jensen was sexually abusing children and failed to report or prevent such acts. In that suit, known as the *Jane Doe-1* litigation, the plaintiffs asserted that from 2007 until Michael Jensen's incarceration in 2013, CHC was repeatedly put on notice of Michael Jensen's conduct, and that he sexually abused children "with the knowledge and assistance or ratification of the Mormon Church, the Church officials and bodies in charge of the local 'ward' and 'stake' (including the Church's local 'Bishop,' 'Stake President,' 'Relief Society President,' and 'Stake High Council'), and other individual Defendants" named in the suit. The plaintiffs claimed that CHC and its agents failed to protect the children from abuse, and instead actively covered up the abuse. The plaintiffs broadly alleged that the CHC defendants were vicariously liable and legally responsible for the acts and omissions of their agents and representatives.

Michael Jensen is the son of Chris and Sandralee Jensen, who were leaders in the Mormon Church, and plaintiffs alleged that they worked with CHC to conceal Michael's crimes. This allegedly entailed trying to coerce C.S.'s parents to allow Michael Jensen to live in their home to hide him from the ongoing police investigation into the sexual abuse, thus exposing C.S. to repeated sexual abuse.

C.S. voluntarily dismissed his claims (through his mother, as guardian and next friend) in *Jane Doe-1* without prejudice after testifying that Michael Jensen never abused him. After his dismissal, the *Jane Doe-1* case proceeded to trial in 2018 but was resolved by settlement mid-trial and then dismissed with prejudice.

After *Jane Doe-1* was settled and dismissed, C.S. threatened to sue and renew his claims against the defendants. However, C.S. agreed to arbitrate instead of proceeding with another civil action. C. S. and the Corporation of the President of the Church of Jesus Christ of Latter-Day Saints ("COP") entered into the 2019 Arbitration Agreement, which expressly provided that C.S. and COP "mutually consent to the resolution of all [C.S.'s]

2

claims or controversies that were or could have been asserted in Jane Doe-1, et al., v. Corporation of the President of the Church of Jesus Christ of Latter-Day Saints, et al., Civil Action No. 13-C-656, Circuit Court of Berkeley County, West Virginia."[4]

In an amended notice of arbitration, C.S. alleged nearly identical claims to those he previously raised in the *Jane Doe-1* litigation. He asserted that certain individuals, whether named as defendants or not, were acting as CHC's agents and were within the scope of their authority when they allegedly concealed Michael Jensen's predatory acts, including that "COP Agents, including but not limited to, Stake President Grow, Bishop Fishel, Bishop Vincent, and Bishop/Stake High Councilor Whitcomb, had a duty to exercise ordinary care," and that these agents, "in their capacities as agents and representatives of CHC, knew and/or had reasonable cause to suspect, as of early 2004 and continuing thru 2012, that Michael Jensen had sexually abused minor children." C.S. alleged that CHC was vicariously liable and legally responsible for these acts, omissions, and breaches of duty.

In the arbitration, the parties used the extensive discovery from the 2013 *Jane Doe-1* litigation and supplemented it with depositions of Mr. Fishel, Mr. Grow, and Mr. Whitcomb, as well as live testimony of multiple witnesses at an arbitration hearing.

At the conclusion of the arbitration, the arbitrator found that C.S. failed to carry his burden and that C.S. failed to establish any entitlement to recovery on any claim against any defendant. Thereafter, on November 9, 2021, C.S., with new counsel, filed the underlying complaint in Berkeley County Circuit Court. All the defendants filed motions to dismiss, alleging that C.S.'s complaint asserted the same claims as were asserted in the *Jane Doe-1* litigation and again at arbitration. Specifically, in support of dismissal, CHC argued that the Arbitration Agreement precluded C.S.'s claims not only against it, but also against all individual defendants as third-party beneficiaries to the agreement. Respondents Whitcomb, Wrye, and Naegle asserted that C.S.'s claims should be dismissed because the 2019 Arbitration Agreement expressly applied to "all [C.S.'s] claims or controversies that were or could have been asserted in Jane Doe-1" and therefore extended to the claims against them that were or could have been asserted in *Jane Doe-1*. Alternatively, they argued that privity exists between them and CHC due to their positions within CHC, thus barring C.S.'s claims on the basis of res judicata. C.S. filed a single opposition response to all the motions to dismiss, arguing that the Arbitration Agreement only applied to C.S. and CHC, and that non-signatories cannot be bound to arbitration agreements.

On May 16, 2022, the circuit court heard oral arguments on the motion to dismiss. The court determined that the Arbitration Agreement was not ambiguous:

> The court finds it compelling, persuasive and dispositive that all the
> allegations raised by C.S. in the current complaint could have been raised in

---

[4] The parties have stipulated that CHC is the successor organization to the COP.

3

prior litigation; i.e., *Jane Doe-1*, filed in 2013. Although there are some new factual allegations and individual defendants in the newly filed complaint, the allegations and the identification of other defendants could have been made in the original litigation. Indeed, Plaintiff's counsel admitted and acknowledged on the record that the facts alleged in the current complaint could have been raised in the initial complaint filed by C.S., and the Court recognizes that acknowledgment as an undisputable finding of fact.

The Court therefore finds that the arbitration agreement, read in its totality, and with plain meaning given the language, is not ambiguous. The Court notes that C.S. was represented by counsel at all stages of the litigation, including arbitration, and that C.S. entered into mediation voluntarily. The Court further finds that a final disposition of C.S.'s claims through arbitration was the intent of the parties at the time as set forth in the arbitration agreement which clearly states, "[W]hereby the parties recognize and desire the benefits of a speedy, impartial, final and binding dispute resolution procedure."

The court dismissed C.S.'s complaint by order dated June 7, 2022. On June 21, 2022, C.S. filed a Rule 59(e) motion seeking to alter the June 7, 2022, order, arguing that the court failed to properly address his argument that a valid contract did not exist between C.S. and the non-church respondents in the Arbitration Agreement. The court denied the motion on July 20, 2022, finding that C.S. failed to provide a legally sufficient basis to challenge the prior ruling. The court also certified the June 7, 2022, order as a final judgment under Rule 54(b). C.S. filed his Notice of Appeal on August 19, 2022, identifying only the July 20, 2022, order as the order being appealed herein.

The standard of review for a Rule 59(e) motion to alter or amend a judgment "is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed." Syl. Pt. 1, *Wickland v. Am. Travellers Life Ins. Co.,* 204 W. Va. 430, 513 S.E.2d 657 (1998). The judgment underlying C.S.'s motion to alter or amend granted a motion to dismiss. Therefore, we apply the standard applicable to motions to dismiss and review the dismissal of petitioner's complaint *de novo*. Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995).

On appeal, C.S. argues that the circuit court erred in determining that the Arbitration Agreement is unambiguous and should be enforced along its clear terms, while also finding that it should be stretched to include protections for non-signatories where no language from the agreement indicated an intent to benefit any third party. C.S. asserts that because the only signatories to the Arbitration Agreement are C.S. and CHC, it cannot be construed to benefit any non-church entities or taken to mean that C.S. intended to cede his right to raise any future claim against any other party. Moreover, he suggests that CHC has no legal

right to prevent its parishioners from being sued in their individual capacities for facilitating and/or conspiring to facilitate C.S.'s sexual abuse.

In determining whether parties agreed to arbitrate a certain matter, courts should generally apply state law principles regarding contract formation. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). "The question as to whether a contract is ambiguous is a question of law to be determined by the court." Syl. Pt. 1, *Berkeley Cnty. Pub. Serv. Dist. v. Vitro Corp.*, 152 W. Va. 252, 162 S.E.2d 189 (1968). As our Supreme Court explained, "[c]ontract language is considered ambiguous where an agreement's terms are inconsistent on their face or where the phraseology can support reasonable differences of opinion as to the meaning of words employed and obligations undertaken." Syl. Pt. 6, *State ex rel. Frazier & Oxley, L.C. v. Cummings*, 212 W. Va. 275, 569 S.E.2d 796 (2002).

Upon review, we agree with the circuit court. The operative language in the Arbitration Agreement is unambiguous on its face. The Arbitration Agreement states that "the Parties mutually consent to the resolution of all [C.S.'s] claims or controversies that were or could have been asserted in *Jane Doe-1*. . ." This language does not have to be "stretched" to include the resolution of claims alleged in the underlying suit—that is what the agreement explicitly includes, as long as those claims were (or could have been) brought in the *Jane Doe-1* litigation. Despite C.S.'s contentions, there is no operative language to otherwise limit the scope of the claims to be arbitrated; therefore, his argued interpretation is not reasonable. "The mere fact that parties do not agree to the construction of a contract does not render it ambiguous." *Berkeley Cnty. Pub. Serv. Dist.*, 152 W. Va. at 252, 162 S.E.2d at 189, Syl. Pt. 1.

While not named as defendants in the prior action, the record reflects that during the *Jane Doe-1* litigation, C.S. developed facts revealing possible claims against Mr. Whitcomb, Mr. Wrye, and Mr. Naegle. Further, as to the other individual defendants in this action, they were specifically named as defendants in the *Jane Doe-1* suit, where C.S. already developed facts and theories of liability against them. We agree with the circuit court. As conceded by counsel below, all claims alleged in the current action could have been asserted in *Jane Doe-1*, as none arise from individuals or information unknown at the time of the prior litigation.[5] Accordingly, we find that C.S. has released his claims against all defendants in this action.[6]

_____

[5] As mentioned above, in its June 7, 2022, dismissal order, the circuit court found that: "Indeed, Plaintiff's counsel admitted and acknowledged on the record that the facts alleged in the current complaint could have been raised in the initial complaint filed by C.S., and the Court recognizes that acknowledgement as an undisputable finding of fact."

[6] C.S., in passing, also disputes the validity of the Arbitration Agreement on contract formation grounds, contending that CHC lacked the ability to release its agents from being

5

Having found that the parties' agreement to arbitrate in this case clear and unmistakable, we reiterate that "[i]n determining whether the language of an agreement to arbitrate covers a particular controversy, the federal policy favoring arbitration of disputes requires that a court construe liberally the arbitration clauses to find that they cover disputes

---

sued in their individual capacities, as they were not signatories to the contract. Again, we disagree. C.S. is under the misapprehension that contractual privity must exist between himself and the individual defendants for C.S.'s broad release to apply to them. C.S. fails to contend with the plain language of the Arbitration Agreement he signed; in bargaining to arbitrate *all* claims that could have been brought in the prior action, both parties assumed a broad risk—the risk that arbitration of the matter would resolve possible claims against the individual defendants in their individual capacities. Had it lost in arbitration, CHC assumed the risk of compensating C.S. for *all* claims he could establish; i.e., CHC provided indemnity to the other defendants, even extending to claims against them individually. Of course, conversely, when C.S. lost in arbitration, those claims were resolved and relinquished. Because we find the unambiguous terms of the agreement between CHC and C.S. to preclude the claims against the individual defendants, establishing a contractual relationship between the individual defendants and C.S. is irrelevant.

Below, in its motion to dismiss, CHC specifically raised enforcement of the Arbitration Agreement to bar claims against itself *and all individual defendants* as third-party beneficiaries. Accordingly, because a signatory party asserted enforcement of the contract as to all parties, any nonparty enforcement issues are irrelevant, and the circuit court's decision to dismiss all defendants was proper.

As an adjacent matter, we also do not find C.S.'s release to be unconscionable. "Under West Virginia law, we analyze unconscionability in terms of two component parts: procedural unconscionability and substantive unconscionability." *Brown ex rel. Brown v. Genesis Healthcare Corp.*, 228 W. Va. 646, 681, 724 S.E.2d 250, 285 (2011), *rev'd on other grounds sub nom. Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530 (2012). Procedural unconscionability includes considerations such as inequities, improprieties, or unfairness in the bargaining process and formation of the contract. *See id.* at Syl. Pt. 17. Substantive unconscionability involves unfairness in the terms of the contract and includes considerations such as whether a term will have an overly harsh effect on one party. *See id.* at Syl. Pt. 19. We find no indication of procedural unconscionability. C.S. was represented throughout contract negotiations and secured favorable terms within the Arbitration Agreement, ensuring the appearance of key witnesses at arbitration. We also fail to find substantive unconscionability. This result is the direct and obvious operation of the terms C.S. agreed to when he decided to "resolve by arbitration *all* . . . claims that were or could have been asserted in [*Jane Doe-1*] . . ." without any limitation. Further, any harshness of this result is not undue, it is the natural consequence of both parties agreeing to a winner-take-all arbitration.

6

reasonably contemplated by the language and to resolve doubts in favor of arbitration." *State ex rel. City Holding Co. v. Kaufman*, 216 W. Va. 594, 598, 609 S.E.2d 855, 859 (2004) (citations omitted).

The claims alleged in C.S.'s complaint are barred, as they were or could have been brought in the 2013 *Jane Doe-1* claim and are thus subject to the Arbitration Agreement. Therefore, we conclude that the circuit court properly dismissed C.S.'s claims against all defendants in the underlying matter.

For the foregoing reasons, we affirm the circuit court's July 20, 2022, Order Denying in Part and Granting in Part Plaintiff's Rule 59(e) Motion to Alter the Court's Order of June 7, 2022, or, in the Alternative, Request for Certification Under Rule 54(b).

Affirmed.

**ISSUED:** November 8, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Thomas E. Scarr
Judge Charles O. Lorensen